LOUISVILLE AND NASHVILLE RAILROAD COMPANY, *Plaintiff in Error*, v. CITIZENS AND PEOPLES NATIONAL BANK OF PENSACOLA, *Defendant in Error*.

### Opinion Filed November 28, 1917.

1. In an action of trover against a drawee bank for the conversion of a check upon the bank, where the declaration shows a conversion of the check by the bank it is unnecessary to allege a demand by the plaintiff for a return of the check and a refusal by the defendant.

2. The payee of a bank check may maintain an action of trover against a bank upon whom the check is drawn which pays the check to an unauthorized person who falsely represents himself to be the agent of the payee to endorse the check and receive the proceeds of the same.

Writ of Error to Circuit Court for Escambia County, A. G. Campbell, Judge.

Judgment reversed.

*Blount & Blount & Carter*, for Plaintiff in Error;

*Watson & Pasco*, for Defendant in Error.

ELLIS, J.—The plaintiff in error sued the defendant in error in the Circuit Court for Escambia County.

The declaration contained two counts. The first count alleged in substance that a freight agent of the plaintiff at Pensacola named W. W. Weekly received from the agent of the Atlantic Compress Company a check on the defendant's bank for the sum of nine hundred and five dollars payable to the order of the plaintiff, which check had been drawn by Virgin & Carter to pay a debt due

25—Vol. 74

to the plaintiff by them; that Weekly, now deceased, endorsed the check by writing the initials of the plaintiff and his own name as agent upon the check and pre-sented the same to the defendant bank for payment; that the bank paid the amount of the check to Weekly and charged the same to the account of Virgin & Carter and returned the check to them; that Weekly was not authorized by the plaintiff to endorse or collect the check and did not pay over to plaintiff the money so collected, nor has the plaintiff received the same from any other source.

The second count was for money had and received.

The bank demurred to the declaration upon the following grounds:

"1. That the said declaration states no cause of action against this defendant.

"2. That the said declaration sets up no sufficient facts to show any liability upon the part of the defendant.

"3. That the said declaration does not allege that the said W. W. Weekly had no authority to collect the said money.

"4. That the said first count of the declaration does not allege that the said 'W. W. Weekly had no authority to endorse and, or collect the said checks.

"5. That the said declaration does not allege that the said W. W. Weekly, had no authority to receive money owing to the plaintiff.

"6. That the said count of the declaration alleges nothing more than that the said Weekly received the money and embezzled the same, without denying the authority of Weekly to receive.

"7. There is nothing alleged in the declaration sufficient to show that the transaction in the said first count of the declaration referred to created any privity between

the plaintiff and this defendant, or created any liability on the part of this defendant to the plaintiff, nor does it show any such contractual relation between the plaintiff and the defendant as to authorize the plaintiff to maintain an action against the defendant for or on account of the several matters and things in the said first count of the declaration set up.

"8. That it does not appear from the allegations of the said first count of the declaration but that the said Weekly expended the alleged money for the benefit of the plaintiff.

"9. That the fact, if it be a fact, that the said Weekly did not pay over to the plaintiff the said money in the said first count of the declaration mentioned, does not create any liability on the part of the defendant to the plaintiff."

The demurrer was sustained, and the plaintiff withdrawing the second count and electing to stand on the first count, a judgment for the defendant was entered, and the plaintiff took a writ of error. The errors assigned are that the court erred in sustaining the demurrer and in entering judgment for the defendant.

The first count of the declaration may be considered as one in trover for the conversion of a check. The check was the property of the plaintiff; it was in the plaintiff's possession, for Weekly's possession was the plaintiff's possession; it was taken by the defendant upon whom it was drawn, and the proceeds paid to a person who had no authority from the plaintiff to receive it; the account of the drawer was charged with the amount paid and the check was returned to the drawer. It was unnecessary to allege a demand by the plaintiff and a refusal by the defendant to return the check, because the allegations of the declaration show a conversion. 1 Archbold's Nisi

Prius, 549-553; Robinson v. Hartridge, 13 Fla. 501; Anderson v. Agnew, 38 Fla. 30, 20. South. Rep. 766.

The transaction as set forth in the declaration would support a count for money had and received. The check was the bank's authority for paying to the plaintiff from the account of Virgin & Carter the amount of money named in the check. The drawer of the check had the necessary funds on deposit, and the bank was solvent. Therefore when the bank took from the funds on hand, or from the funds of Virgin & Carter on deposit, the amount stated in the check, it had in its possession for that instant of time money which it should have paid to the plaintiff; but the bank took the responsibility of saying that a payment to Weekly was a payment to the plaintiff. To hold that the drawer of the check is charged with the responsibility of seeing that the bank pays the check to an authorized agent of the payee after the drawer has delivered the check to the payee is to unsettle all transactions in which checks are used to pay debts, and introduce confusion worse confounded into the mercantile and business world.

Virgin & Carter according to the allegations of the declaration paid their debt to the plaintiff. They gave a check to the plaintiff on a solvent bank in which they had ample funds. That the bank was willing to honor the check when presented is shown by the fact that it did pay when presented. Under these circumstances the debt of Virgin & Carter was paid. If shortly after the bank paid the check it had failed, would the loss fall upon Virgin & Carter?

The declaration considered from a common law standpoint is somewhat incomplete or informal, and although it does not contain the words of the statutory form, it contains the substance without prolixity. The defend-

ant took up the check and returned it to the drawer without authority from the owner to do so. This was an interference with plaintiff's property and constitutes a conversion, because when the bank undertook to return the check to the maker it exercised ownership over it. The returned check was used as a voucher or receipt or acquittance of the defendant's obligation to the drawer. This unauthorized act of ownership deprived the plaintiff of the use and possession of the check.

Lord ELLENBOROUGH, C. J., said: "It might be a hardship upon the defendant, but that by law a person is guilty of a conversion who intermeddles with my property and disposes of it; and it is no answer that he acted under authority of another who himself had no authority to dispose of it." Stephens v. Elwell, 4 M. & S. 259. Trover lies for all personal chattels, bank notes, bills of exchange and other negotiable instruments. 1 Archbold's Nisi Prius, p. 551.

The question presented by the declaration seems to us to be similar in all respects to that presented in Bristol Knife Co. v. First National Bank of Hartford, 41 Conn. 421, and would even answer the objections raised by the dissenting opinion in that case. The facts were as follows: The Bristol Knife Co. was a corporation; one of its customers named Myers sent to the company a check drawn by Hopper on the Security Bank in payment of a debt. The Bristol Knife Co. endorsed the check to the First National Bank and sent it by a messenger, the brother of the president of the Knife Company, to the First National Bank at Hartford for deposit. The messenger destroyed the deposit slip, presented the check at the bank and stated that he wanted currency for it as the "company wanted to pay off its hands." The currency was paid to the messenger who absconded. The

court held the bank liable in assumpsit. Two judges dissented upon the grounds that the plaintiffs were the primary cause of the fraud, because the messenger was their special agent for the purpose of delivering the check to the defendants as a deposit.

The court, speaking through Mr. Justice Loomis, said: "The principles that control this case are not to be found in any distinction between special and restrictive indorsements of negotiable paper, nor in any view of the rights of bona fide holders or purchasers of such paper. The record shows that the defendants put no faith in any title which the holder of the check had or assumed to have; hence their position is not like that of a bona fide purchaser of negotiable paper from a holder clothed with apparent legal title. The holder in this case not only made no pretense of title, but openly professed to act only in behalf of the plaintiffs. The defendants well knew that the check was the property of the plaintiffs, that the transaction was wholly with them; and that they must account to them for the avails. It is found that the defendants have collected the full amount of the check; but have they ever accounted to the plaintiffs for the same? It is conceded that they paid the amount of the check to the messenger who brought it to the bank, and the question is, whether such payment in legal effect is a payment to the plaintiffs? The whole case resolves itself into a mere question of agency."

In the case at bar it cannot be assumed that Weekly had authority to take the check to the bank for deposit to the credit of the plaintiff. Certainly he had no authority to endorse the check for the plaintiff and receive the proceeds, for that is admitted by the demurrer. Therefore the bank and no one else assumed the responsibility of dealing with Weekly as the plaintiff's agent. The

drawers of the check were not at fault, because they made it payable to the plaintiff's order; the plaintiff was not at fault for it had given Weekly no such commission as he undertook. His authority as the plaintiff's agent ceased when as freight agent he received the check from the makers, as we construe the declaration. Under the circumstances of this case as shown by the declaration, the liability of Virgin & Carter upon the account which they owed to the plaintiff and to pay which they sent the check would seem to be discharged. There would seem to be no sufficient reason for holding Virgin & Carter responsible for the dishonesty of the plaintiff's agent whom it had designated to receive the check. As between the plaintiff and the makers of the check the loss, if any, should fall upon the party more directly responsible for, and having control of the agent whose dishonesty occasioned it. See McFadden v. Follrath, 114 Minn. 85, 130 N. W. Rep. 542; Burstein v. Sullivan, 134 App. Div. (N. Y.) 623, 119 N. Y. S. 317. The case is somewhat analogous to those in which a check payable to one person is presented for payment by another person of the same name. As between the payee and the bank paying the check, the loss falls upon the latter. Thomas v. First Nat. Bank of Gulfport, 101 Miss. 500, 58 South. Rep. 478, 39 L. R. A. (N.S.) 355; Indiana Nat. Bank v. Holtsclaw, 98 Ind. 85; 7 C. J. 693 N. L.

In the Indiana case the court held that the unauthorized indorsement of the check conferred no title, and in contemplation of law the check remained untransferred, and in this condition was subject to plaintiff's acceptance for whom it was intended, but was sent to the wrong address. So the unauthorized indorsement of the check in this case conferred no title, neither did its delivery; but the defendant nevertheless has undertaken

392        SUPREME COURT OF FLORIDA.

L. & N. R. R. Co. v. Citz. & Peoples Nat. Bank—Opinion of Court.

to dispose of it as its own by charging it to the drawers' account and returning it to them.

The rule is well established that a banker on whom a check is drawn must ascertain at his peril the identity of the person named in it as payee;. but it does not apply in this case. There was no question as to the identity of the payee, nor was payment made upon a forged instrument. The bank simply assumed the sole responsibility of treating Weekly as the agent of the plaintiff with authority to endorse its name upon checks and collect the proceeds. It was guilty of negligence for which no one other than itself was responsible. It committed a wrong for which it is answerable in damages; a wrong to which it cannot be said that either the drawers or payee were parties.

The section in the negotiable instruments law providing that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and that the bank is not liable to the holder unless and until it accepts or certifies the check (Section 3098 General Statutes), does not apply. The plaintiff is not suing the bank for breach of a contract in not paying the check. It is suing the bank because the latter has undertaken to exercise ownership over a check which belonged to the plaintiff without its authority, because the bank had in its possession funds, the proceeds of the check, which it should have paid to the plaintiff, but negligently failed to do so.

We think there is nothing in the point that the damages in this case would be merely nominal; and if nominal damages only were claimed the case would not be within the jurisdiction of the court.

The order sustaining the demurrer to the declaration was error, for which the judgment is reversed.

BROWNE, C. J., AND WHITFIELD, TAYLOR AND WEST, J. J., concur.