### STATE *v*. BANK OF COMMERCE.

### Opinion delivered April 15, 1918.

1. BILLS AND NOTES—FORGED ENDORSEMENT—PAYMENT—ACCEPTANCE.—As erroneous payment upon a forged endorsement is not an acceptance of a check or draft.

2. BILLS AND NOTES—FORGED ENDORSEMENT OF CHECK—LIABILITY OF DRAWEE.—L. purchased cotton making its check, drawn on appellee bank, payable to the Arkansas State Penitentiary, the cotton being purchased from the State Board of Penitentiary and Reform School Commissioners. L. delivered the check to one A., the then secretary of said State Board of Commissioners. A. then fraudulently endorsed the check, and the amount thereof was paid to him by appellee bank. A. appropriated the money to his own use.. The State brought an action against appellee bank, the complaint alleging the facts set out above. Appellee demurred to the complaint. *Held,* the trial court properly sustained the demurrer.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellant.

The demurrer should have been overruled. The complaint stated a good cause of action. A bank must ascertain at its peril that a person presenting a check is authorized to receive the money and endorse the check. If the endorsement is a forgery the bank becomes liable. 5 R. C. L. 566; 7 C. J. 693, § 422. Zane on Banks, etc., § § 1460-7; Morse on Banks, etc., (5th ed.) § 474; Magee on

Banks, etc., (2d ed.) 351; 2 Daniel Neg. Inst., § 1663. The cases in 94 U. S. 343, and 98 Ark. 1, and § 198 of the uniform Negotiable Instrument Act, 1913, do not sustain appellee's contention. It is conceded that the mere giving a check is not an assignment of the amount to the payee, until accepted, yet when the bank received it and paid it and charged the amount to the drawer it was an acceptance and the bank was liable for the amount of the wrongful payment. Where a bank pays a check to other than the payee on a forged or unauthorized indorsement and charges it to the account of the drawer, the bank is liable. 6 Hun, 124; 73 Pa. St. 483; 3 McArthur 54; 114 Minn. 85; 92 Tenn. 154; 41 Conn. 421; La. Ann. 481; 47 S. W. 234; 88 Tenn. 380; 46 Mo. 186; 109 Minn. 440; 52 Id. 223; 74 Id. 41; Van Schaack on Bank Checks, 114; Michie on Banks, etc., 1215; 5 R. C. L. 566, and many others. See Morse on Banks ,etc., (5th ed.) §474, 1215; 14 La. Ann. 481, etc.

*Morris M. & Louis M. Cohn,* for appellee.

This case falls within the rule of 98 Ark. 1, and 94 U. S. 343, 346. See L. R. A. 1916, C. 164-171; Kirby & C. Dig. § 7072. The cases cited by appellant do not apply.

SMITH, J. The complaint in this cause contained the following allegations:

"That on November 27, 1916, Landauer Brothers Cotton Company of Little Rock, Arkansas, executed its check upon the defendant, the Bank of Commerce, in the sum of $5,000, payable to the order of the Arkansas State Penitentiary, said check being in part payment of certain cotton sold to the said Landauer Brothers Cotton Company by the State Board of Penitentiary and Reform School Commissioners. That on said date said check was delivered by said Landauer Brothers Cotton Company into the hands of R. G. Anderson, who was at that time the clerk of the said State Board of Penitentiary and Reform School Commissioners. That on said date the said R. G. Anderson, wholly without any authority or right so to do, endorsed said check and pre-

sented it to the defendant, the Bank of Commerce, and the said defendant then and there wrongfully and without any right or authority whatsoever paid to the said R. G. Anderson the $5,000 in cash and then and there charged said check against the account of the said drawers thereof, the said Landauer Brothers Cotton Company.

"That the said R. G. Anderson wholly failed to pay over the said $5,000 or any portion thereof to the State Board of Penitentiary and Reform School Commissioners, or to the State Treasurer, but that the said Anderson appropriated said money to his own use. That the said State Board of Penitentiary and Reform School Commissioners and the State of Arkansas have wholly failed to receive any portion of said money.

"That the said endorsement of said check by the said Anderson was a forgery. That the said Anderson as clerk of the said Board was not empowered or authorized by law to endorse said check nor to receive the money thereon, nor was the said Anderson authorized by the said Board nor any member thereof to endorse said check nor to receive the money thereon. That by reason of the premises aforesaid, the plaintiff, the State of Arkansas, for the use of the Arkansas State Penitentiary, is entitled to recover from the said defendant, Bank of Commerce, the said sum of $5,000 together with interest thereon at six per cent. per annum from November 27, 1916."

A demurrer to this complaint was sustained, and the State having elected to stand upon the complaint, the cause was dismissed and this appeal has been prosecuted.

Counsel for the State concede that the point in issue was decided by this court in the case of *Sims* v. *American National Bank of Fort Smith,* 98 Ark. 1. It is argued, however, that the opinion in that case, insofar as it appears to be decisive of the point at issue in this case, is dictum. The point decided in the Sims case was responsive to the following question asked in the opinion: "Can the payee of a check or draft whose indorsement was forged, after payment by the bank upon which it was

drawn upon such forged indorsement, maintain an action against the drawee to recover the amount of it?'' The court treated that question as stating the point there in issue and made its answer to that question decisive of the facts of that case. Therefore, the answer to this question can not be treated as dictum. The court recognized the question as one of first impression and after a review of the authorities, as is indicated both by the opinion itself and the abstract of the briefs filed in that case, took a position based upon the decision of the Supreme Court of the United States in the case of *First National Bank* v. *Whitman,* 94 U. S. 343, 24 L. Ed. 230. The case cited and relied upon presents the exact question which we have here, and this court quoted with approval the following language from that case: ''We think it is clear, both upon principle and authority, that the payee of a check, unaccepted can not maintain an action upon it against the bank on which it was drawn.'' The doctrine of the Sims case, *supra,* was reaffirmed by this court in the case of *Rogers Commission Co.* v. *Farmers Bank of Leslie,* 100 Ark. 537, where it was said: ''That the giving of a check upon a bank is not an assignment of the amount of it to the payee upon which he can bring a suit against the bank for its payment, there being no privity between the drawee bank and the holder of the check until the acceptance by it.'' The point there decided, under the facts of that case, can not be said to be dictum.

The opinion of this court, in the Sims case, is vigorously assailed by learned counsel for the State upon the ground that this doctrine as applied to the facts of that case is dictum, and it is also assailed upon the ground that it is contrary to the weight of authority and is against the sounder reason.

In reply to this argument it may be said that the point at least has been decided by this court, as the doctrine of the Sims case, *supra,* was reaffirmed in the Rogers Commission Co. case, *supra,* and for the reason stated the language quoted was not dictum. Learned

counsel are mistaken in the statement that these decisions are contrary to the weight of authority upon this subject. The contrary appears to be the case, as is shown by the exhaustive note on the subject which is appended to the case of *Ballard* v. *Home National Bank,* L. R. A. 1916 C, 161. The author of this note sets out the reported cases upon this subject and states the majority rule to be that announced by the Supreme Court of the United States in the case of *Bank* v. *Whitman, supra.* The opinions of this court in the cases mentioned, in 98th and 100th Arkansas Reports, are cited along with the others as comprising the majority rule. According to this note, there can be no question that the rule as approved by this court in the cases cited accords with the majority rule on the subject. This question was thoroughly considered by this court in the Sims case, *supra,* and this court took its position after a review of the leading authorities upon the subject. We do not therefore feel at liberty to overrule our cases simply because it might appear (which we do not decide) that the minority rule is based upon the sounder reason.

This court gave in the Sims case, *supra,* the following reason for the position which it then took: "In such matters it is important that uniformity should obtain in the different jurisdictions, and that but one rule should be applied to the business dealings of the citizens of the different states with each other, so closely interwoven is such business activity and association with the vast commercial life of the nation; and since the United States Supreme Court is the highest court of last resort, and does not follow the decisions of the State courts upon general banking and commercial questions, we will follow it."

Since the rendition of the opinions of this court in the cases cited, the negotiable instrument law has been enacted (Acts 1913, page 260), and it is argued by counsel for appellee that if the question at issue had not already been decided in the cases cited that the enactment of this law enacts that rule. Section 189 of this act is as follows:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank and the bank is not liable to the holder unless and until it accepts or certifies the check." Section 132 of this act is as follows: "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

The author of the note to the case cited in 1916 L. R. A., *supra*, expresses the view that the enactment of a negotiable instrument law by a State operates to enact what he calls the majority rule; and the cases there cited appear to support that view. Whether this be the necessary effect of the enactment of the negotiable instrument law in this State or not, the provisions of the statute are certainly not contrary to the decisions of this court prior to its enactment.

It is argued that the action of the bank in paying the check and charging it to the account of the drawer operates as an acceptance of the check by the bank and thereby assigns *pro tanto* the amount of the check to the use and benefit of the legal owner of the check, and that when payment has been made and the amount paid has been charged against the drawer, no question remains except the legal ownership of the sum of money thus assigned upon the books of the bank, and that the question to be decided is that only of the ownership of the money. In support of this view counsel cite section 474 of Morse on Banks and Banking, and the text cited appears to support that position. But, insofar as the cases cited by the text support it, these cases are from courts which have adopted the minority rule. It must be conceded, of course, that when the bank has accepted a check that its liability becomes fixed in favor of the payee for the amount thereof. The negotiable instrument law so provides and the cases on the subject so hold. But has there been an acceptance by the bank, where the payment

was made upon a forged endorsement? An answer to this question is found in 2 Michie on Banks and Banking, in the note No. 80 found at page 1217. The caption of this note is as follows: "Payment upon unauthorized endorsement held not an acceptance authorizing action by real owner." The author cites the case of *Bank* v. *Whitman, supra,* and other cases which announce the majority view. The author cites in support of the statement contained in the heading of his note, a portion of the opinion in the case of *Bank* v. *Whitman, supra,* as follows: "It is further contended that such an acceptance of the check as creates a privity between the payee and the bank is established by the payment of the amount of this check, * * * in the manner described. This argument is based on the erroneous assumption that the bank has paid this check. If this were true it would have discharged all of its duty and there would be an end of the claim against it. The bank supposed that it had paid the check but this was error. The money it paid was upon the pretended and not the real endorsement of the name of the payee. The real endorsement of the payee was as necessary to a valid payment as the real signature of the drawer and in law the check remains unpaid. Its pretended payment did not diminsh the funds of the drawer in the bank or put money into the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before. We can not recognize the argument that the payment of the amount of a check or sight draft, under such circumstances, amounts to an acceptance creating a privity of contract with the real owner. It is difficult to construe a payment as an acceptance under any circumstances. The two things are essentially different. One is a promise to perform an act, the other an actual performance." It would appear to follow from an adherence to the majority rule that the erroneous payment upon a forged endorsement was not an acceptance.

What we have here said does not conflict with the views expressed in the case of *Mills* v. *Hurley Hdw. & Furn Co.*, 129 Ark. 350, 196 S. W. 121. There the suit was by the payee against the drawer of a check which had been delivered to one who had the authority to receive it. The agent's authority was exceeded, not by ' receiving the check, but by endorsing it, and we held that the drawer of a check who had delivered it to one authorized to receive it in payment of a demand against the drawer had discharged his full duty by providing funds to his credit in the hands of the bank against which the check was drawn and that the drawer of the check, under those circumstances, was not responsible for the dereliction of the defaulting agent in wrongfully endorsing the check, and that the check thus properly received, but wrongfully endorsed, constituted full payment of the sum of money named in the check. A majority of the judges are of the opinion that the facts just stated sufficiently distinguish that case from the present one without saying anything further and that the decision in that case is not in conflict with the conclusion now reached in this one. They decline to express any opinion at this time as to the authority of Anderson or the Board of Penitentiary Commissioners to receive the check or to collect funds due the State from sales of products of the State farm.

It follows, therefore, that the demurrer was properly sustained and the judgment of the court below is affirmed.