### LONE STAR TRUCKING CO. v. CITY NAT. BANK OF COMMERCE.
### (No. 1950.)

(Court of Civil Appeals of Texas. Amarillo. April 26, 1922.)

Banks and banking ⬅140(3)—Payment by drawee bank of check upon forged indorsement and retention of check after payment not "acceptance" sustaining suit by payee against drawee.

Under Negotiable Instruments Law, §§ 132, 185, 189, 191 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—132, 6001—185, 6001—189, 6001—191), requiring an acceptance of a check by a drawee bank in writing to sustain a suit on the check by payee against the bank, a drawee bank's payment of a check upon a forged indorsement, stamping the check "Paid," and charging the amount thereof to the drawer's account, does not constitute such an acceptance, nor can the bank's retention of a check so paid after payment be deemed such an acceptance, under section 137 (article 6001—137), providing that the destruction or refusal to return a bill delivered for acceptance shall be deemed an acceptance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Acceptance.]

Appeal from Wichita County Court; Guy Rogers, Judge.

Action by the Lone Star Trucking Company against the City National Bank of Commerce. From a judgment for defendant, plaintiff appeals. Affirmed.

Weeks, Morrow & Francis, of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

BOYCE, J. Appellant, Lone Star Trucking Company, brought this suit against the appellee bank, alleging that the Texas & Pacific Oil Company drew a check for the sum of $310 on the defendant bank, payable to the order of plaintiff; that the bank paid said check to one John McCole, who forged the plaintiff's name to the indorsement thereon and presented it for payment and who absconded with such funds; that the plaintiff has presented said check to the bank for payment, which has been refused.

It appeared on the trial that the bank did pay such check to John McCole; that the check was thereupon stamped "Paid" and charged to the account of the Texas & Pacific Oil Company. An issue was made as to the authority of John McCole to indorse the name of the plaintiff and collect the check, and the jury found that he did have such authority. The jury further found that the funds represented by such check belonged to John McCole. Judgment was rendered for defendant.

We think the findings of the jury, as stated, are not supported by the evidence, but, as we have concluded that the plaintiff was not entitled to recover in any event, we need not discuss the evidence, but will dispose of the case on the assumption that the indorsement was a forgery, and the payment to McCole unauthorized.

Prior to the adoption of the Negotiable Instruments Law the Texas courts had held, in accordance with the weight of authority elsewhere, that the payee of an unaccepted check could not sue the drawee because there was no privity between them. House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561. There was a conflict in the authorities as to whether the payment of a check on a forged indorsement was such acceptance as to sustain an action on the check in favor of the original payee against the drawee. Justice Lurton, writing the opinion for the Supreme Court of the state of Tennessee, in the case of Pickle v. Muse, 88 Tenn. 380, 12 S. W. 919, 7 L. R. A. 93, 17 Am. St. Rep. 900, took the affirmative of this question, and the Supreme Court of the United States, in the case of First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229, took the negative. The respective opinions in these cases present very strongly the two sides of the question and need no elaboration. A collaboration of the authorities following the two lines of decision will be found in the notes in Annotated Cases, 1917D, 1055, and 14 A. L. R. 764. We believe that the conclusion of the Supreme Court of the United States is sustained by better reason. As pointed out by Justice Snodgrass in the dissenting opinion in the case of Pickle v. Muse, supra, a divergence of decision of such questions between the state courts and federal courts would result in an establishment of two standards of law to be administered as to the same transactions in the same state, as the state courts would follow the decision of the appellate courts of the state and the federal courts would follow that of the Supreme Court of the United States. We would therefore be inclined to follow the decision in the case of Bank v. Whitman, supra, if the question were to be decided independent of the Negotiable Instruments Law.

The check in question was drawn after the Negotiable Instruments Law, passed by our Legislature in 1919 (Laws 1919, c. 123 [Vernon's Ann. Civ. St. Supp. 1922, arts. 6001 —1 to 6001—197]), took effect and the rights of the parties are governed by its provisions. We quote the following sections of the law for consideration in our further discussion of the case:

"Sec. 185. A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this Act applicable to a bill of exchange payable on demand apply to a check." Article 6001—185.

"Sec. 189. A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Article 6001—189.

"Sec. 132. The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money." Article 6001—132.

"Sec. 191. [In part.] 'Acceptance' means an acceptance completed by delivery or notification." Article 6001—191.

"Sec. 137. Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same." Article 6001—137.

It will be seen that under these provisions an acceptance is still necessary to sustain a suit by the payee, and a requirement, not a condition under the law before such legislation, is added that the acceptance be in writing. This latter requirement has led some of the courts that had formerly held that payment of the check on a forged indorsement was acceptance to recede from such position. Elyria Savings & Banking Co. v. Walker Bin Co., 92 Ohio St. 406, 111 N. E. 147, L. R. A. 1916D, 433, Ann. Cas. 1917D, 1055; Clark & Co. v. Warren Sav. Bank, 31 Pa. Super. Ct. 647. The opinions in the cases of State Bank of Chicago v. Mid-City Trust & Savings Bank, 295 Ill. 599, 129 N. E. 498, 12 A. L. R. 989, and B. & O. Ry. Co. v. First Nat. Bank, 102 Va. 753, 47 S. E. 837, comment on the fact that under the Negotiable Instruments Law the acceptance must be in writing and intimate that this requirement adds strength to the conclusion that the so-called payment of the forged indorsement is not such acceptance. The four cases just cited and the case of State v. Bank of Commerce, 133 Ark. 498, 202 S. W. 834, L. R. A. 1918F, 538, were all decided under a Negotiable Instruments Law, containing provisions identical with section 132 and the other sections of our law above quoted, with the exception of section 137, to which we shall presently refer. The Supreme Court of Ohio, in the case just referred to, says:

"Under the Negotiable Instruments Act [the court having referred to provisions identical with those of our law] acceptance means an acceptance completed by delivery or notification. * * * Did the stamping of the checks in question amount to an acceptance as contemplated by this statute? Payment is the natural and legitimate end of a check. Acceptance is essentially different. As has been said, it is the beginning of the active career of the instrument, and there is added to its original vitality a new element of force and strength

calculated to prolong its existence and widen its sphere of usefulness. Acceptance contemplates a promise on the part of the drawee to do something. Where there is an acceptance, a contractual relation arises between the drawee and the holder. The stamping of these two checks by the bank and the charging of them to the account of the drawer was certainly not an acceptance within the meaning of these provisions."

The other cases cited are to the same effect. See, also, in this connection the opinion in the case of First National Bank v. Whitman, supra.

It is suggested that the retention of the check by the bank is, under the provisions of section 137, above quoted, an acceptance. In this connection we should say that there does not appear to have been any refusal on the part of the bank to deliver the check to the plaintiff. It is alleged, as we have stated, that the bank refused to pay it on the plaintiff's presentation thereof. This position may possibly be sustained by the decision in the case of Chamberlain Metal Weather Strip Co. v. Bank of Pleasanton, 98 Kan. 611, 160 Pac. 1138. We do not have access to the statutes of the state of Kansas, and do not know whether the statutory provisions referred to in the case are the same as those of section 137 of our law. We may assume that it is. Mr. Brannon, in his work on the Negotiable Instruments Law, at page 369, makes this comment on this decision:

"There is a double objection to this case: First, section 137 does not apply to checks presented for payment. Second, the court failed to distinguish between the presentation or delivery for acceptance and presentment for payment. The check was not delivered for acceptance, either by the payee or by the wrongful possessor. If the bank refused to return the check to the payee his remedy was an action for conversion of the check."

The court, in the case of First National Bank v. Whitman, supra, in the concluding paragraph of the opinion, recognized the distinction insisted upon by Mr. Brannon in the above quotation. See, also, Westberg v. Chicago Lumber & Coal Co., 117 Wis. 589, 94 N. W. 572, and cases referred to in note in 17 L. R. A. (N. S.) 1266. It was held in the case of First National Bank v. Whitmore, 177 Fed. 397, 101 C. C. A. 401, that the retention or destruction of drafts presented to the drawee for payment was not an acceptance within the meaning of this section of the Negotiable Instruments Law. We infer from Mr. Brannon's note on section 137 that such provision is a part of the Negotiable Instruments Law of Virginia, Pennsylvania, and Ohio, and, if this oe true, the authorities cited above from those states may be relied on to support the conclusion that retention of the check, under the circumstances of its acquisition as in this case, does not constitute an acceptance, though no reference was made to this section of the law in the disposition of the cases. We do not think that the possession of the check by the bank can be held to be an acceptance of the same within the meaning of this section of the law. The presentation for payment was not by the holder and was a wrong against him. Everything that was done by the bank was the result of mistake. The plaintiff, in order to recover of the bank, must repudiate the acts of McCole. Acceptance is a contract, express or implied. Certainly there was no express contract made between the bank and plaintiff, and the acts of the bank did not indicate any real agreement to thereafter pay the check to any one other than McCole. Under general principles of law there was no implied acceptance from such act.

"Such implication arises only when the bill is presented for acceptance, and that no one but the holder (payee or indorsee) can make such technical presentment. * * * Only when the drawee knows that acceptance is expected would he suppose that his conduct can lead to a belief that he does accept. Only when the presentment is by the holder, whose conduct and rights must be affected by acceptance or refusal, is the drawee charged by the strict rules of the law merchant with notice that his conduct may so injuriously affect the person delivering the bill to him." Westberg v. Chicago Lumber & Coal Co., 117 Wis. 593, 94 N. W. 573.

In order to imply an agreement of acceptance contrary to the real intention of the bank, the facts ought to bring the case clearly within the terms of the law providing for such presumption. It is clear, we think, that section 137 was not intended to cover any such facts as are here presented, and that the terms of such section would have to be distorted and enlarged to bring them within its meaning. There may be still another obstacle in the way of a holding that the retention of the check in this case was an acceptance (though we base our decision on the conclusions already announced) in that it does not appear how long the bank held the check, whether any demand was ever made for it by the plaintiff, and refusal to deliver by the bank. It seems to be the general rule that acceptance cannot be implied from mere retention, but either demand and refusal to return or destruction of the check must be shown. The authorities are not, however, harmonious as to this proposition. Brannon on Negotiable Instruments Law, pp. 367, 368; Westberg v. Chicago Lumber & Coal Co., supra; Wisner v. First National Bank, 220 Pa. 21, 68 Atl. 955, 17 L. R. A. (N. S.) 1266, and note.

The case of First National Bank v. Patterson (Tex. Civ. App.) 185 S. W. 1018, cited by appellant, is not, we think, in point. In that case a life insurance company drew its check on the National Bank of Commerce of St. Louis, Mo., payable to the order of the First

National Bank of Snyder, Tex., A. M. Avant, and Ida A. Avant. The check was sent by the drawer to the bank at Snyder, with instructions "to have the payees therein indorse the same to the order of W. H. Patterson and A. J. McDowell, and after the same had been so indorsed to forward the check to Patterson at Dallas." The bank secured the indorsements, but, instead of forwarding to Patterson, as instructed, delivered the check to McDowell and cashed it for him. The difference between that case and this is obvious. The bank there violated express instructions given it for the purpose of protecting Patterson, who brought suit for damages sustained by reason thereof. Other cases are cited by appellant which are in point, such as Pickle v. Muse, supra, and other cases which follow that side of the conflict. Whatever may have been the weight of authority under the old law, we think the decided weight of authority of the cases decided under the Negotiable Instruments Law is in favor of the holding that the payment of the check on the forged indorsement is not an acceptance. We also think that this conclusion is sustained by the better reason, and we therefore hold that the plaintiff shows no right to maintain this suit against the defendant. The judgment will be affirmed.