# Kentucky Title Savings Bank & Trust Company v. Dunavan.

(Decided December 2, 1924.)

## Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Banks and Banking—Payee Held Rightful Owner, Though Ignorant of its Existence or Forgery by His Agent.—Where drawer delivered check to payee's agent pursuant to agreement between payee and another payee, though not knowing of check or its forged indorsement by agent, held rightful owner and entitled to sue drawee bank who had paid amount on such indorsement.

2. Principal and Agent—Agent Authorized to Accept Check Not Thereby Authorized to Indorse Principal's Name Thereon.—That agent has authority to accept a check payable to his principal does not authorize him to indorse principal's name thereon.

3. Banks and Banking—Indorsement Containing Word "Agent;" Held Notice that Indorser Assuming to Act as Agent.—Where check was indorsed with payee's name and that of another, followed by word "agent," it was notice that indorser was assuming to act as agent, in view of Ky. Stats., section 3720b-19, requiring authority of agent to indorse paper to be in writing.

4. Banks and Banking—Drawee Bank Acquires no Title to Check on which Indorsement Forged.—Bank paying check on which indorsement of payee's name was forged acquires no title thereto.

5. Banks and Banking—Payment of Check Not "Acceptance."—The payment by bank of check presented for payment by one having no title does not constitute an "acceptance" thereof, either express or implied, as such word is used by Ky. Stats., sections 3720b-136, 3720b-137, which refer alone to acceptance, where there has been a "presentment" for acceptance.

6. Banks and Banking—Bank Cashing Forged Check and Asserting Forger Authorized to Indorse and Collect it, Held Liable to Owner as for Conversion.—Where bank paid check on unauthorized indorsement of payee's agent, charging it to drawer's account, and, when suit was brought by payee against bank, affirmatively pleaded that forger had authority to indorse and collect it, held that such conduct amounted to a conversion, rendering bank liable to payee, independent of statute.

7. Banks and Banking—Directed Verdict Against Drawee Bank for Check Paid Forger Held Not Excessive.—Directed verdict for payee of check against drawee paying it on forged indorsement held not excessive, because of payment made by forger by check on another bank; evidence showing common management of the two banks, and trial court having given permission to defendant to file statement of forger's account, to show whether payment was from proceeds of forged check, which offer was declined.

HELM BRUCE and BRUCE, BULLITT & GORDON for appellant.

D. MOXLEY for appellee.

Opinion of the Court by Judge McCandless—Affirming.

Dunavan owned two small houses and lots in the city of Louisville. Aside from taxes these were free from encumbrance. Arnold owned a farm in Bullitt county which was encumbered by mortgage lien to the extent of $1,600.00, due to the Louisville Title Company. He had listed this farm for sale with Etheridge, a real estate dealer. Etheridge negotiated a deal with Dunavan for the exchange of these properties. The parties mutually executed a writing in the nature of a title bond, by the terms of whch Arnold exchanged the farm for the two houses and lots, deeds to be executed when Arnold secured a release of the lien on the farm. Each delivered possession to the other. In addition to this it was agreed that Arnold might sell one of the lots for the purpose of securing funds to pay the lien debt on the land, and that if he did so Dunavan would execute deed therefor to the purchaser.

Arnold listed the lots with Etheridge for that purpose and he negotiated a sale of one of them to Martin at the price of $1,700.00. Of this sum Martin gave a check for $300.00, payable to Etheridge, and arranged with the Kentucky Title Company, hereinafter known as the "Title company," to examine the title, giving it the remaining $1,400.00 to be paid the vendor on the delivery of the deed, if title was satisfactory.

Thereupon a deed was prepared for this lot from Dunavan to Martin, and Etheridge carried it to Dunavan, who executed it and delivered it back to Etheridge. At the same time Dunavan executed a deed to Arnold for the other lot and delivered it to Etheridge.

Etheridge carried the Dunavan deed to the title company, and the latter received the deed for Martin and executed and delivered to Etheridge a check for the sum of $1,400.00 drawn in favor of Dunavan on the Kentucky Title Savings Bank & Trust Company, hereinafter called the "Savings bank." Etheridge wrote Dunavan's name on the back of the check, and his own name, followed by the word "agent" and deposited it and the $300.00 check he had received from Martin to his own credit in the First National Bank. Twenty days later Etheridge gave his personal check on the First National Bank to the Louisville Title Company for the sum of $500.00, to be credited on the Arnold mortgage.

The Louisville Title Company credited four hundred dollars of this on the Arnold note, reducing it to $1,200.00. The other one hundred dollars was reserved for interest and taxes. The "title company," the "savings bank" and the "First National Bank" were all housed in the same building, and were under the same management.

Shortly thereafter Etheridge committed suicide, leaving an insolvent estate. Dunavan was not advised as to Etheridge's transactions subsequent to the execution of the deed, but the facts were developed in a suit between Arnold and Dunavan, in which it is indicated that Dunavan was unsuccessful; at any rate, about one year after Etheridge's death, Dunavan filed this action against the "savings bank," alleging the issual of the $1,400.00 check on that bank, payable to his order by the Title company; that this was upon a sufficient consideration; that the title company had a sufficient amount to its credit in the "savings bank" to pay the check; that the check was delivered to Etheridge without plaintiff's knowledge; that Etheridge had no authority from him to collect the check, and the savings bank paid the check to Etheridge on his forged endorsement of plaintiff's name, and returned it to the title company, all without his knowledge or consent.

The answer denied that the payment to Etheridge was without authority from plaintiff, and affirmatively pleaded that Dunavan authorized Etheridge to act as his agent in the endorsement and collection of the check, and this was controverted.

Upon the trial, defendant assumed the burden, the facts appearing substantially as above set out. The court gave a peremptory instruction to the jury to find a verdict for plaintiff in the sum of $1,200.00, which was accordingly done.

Defendant, in addition to its motion for a new trial, moved the court for a judgment in its favor *non obstante veredicto*. These were refused and it appeals.

It is conceded that the purpose of the Martin transaction was to procure a release of the lien on the Arnold farm; that Dunavan executed the deed to Martin and delivered it to Etheridge with the understanding that Etheridge would collect the consideration from Martin and pay off the lien debt or deliver it to Arnold, who would pay it off; that Dunavan did not know the check was being drawn in his favor, or learn of that fact until long

afterwards. It is argued that really Dunavan had no interest in the check, and that so far as he had an interest in the transaction, Etheridge was authorized to act for him, and he was thus authorized to collect the check.

This argument is not impressive. It is true that Arnold was primarily liable for the lien debt, but Dunavan was also indirectly liable so long as the lien remained. In this he was protected so long as he retained the legal title in the lot. When he conveyed that title he surrendered the protection thus afforded and became vitally interested in the consideration paid. True, he was careless and confiding, and Etheridge had an opportunity to collect the consideration in cash from Martin. Indeed, if the title company had issued the check to Etheridge, perhaps Dunavan could not complain, but the title company in a businesslike way protected his rights, and he was thus constituted the legal and rightful owner of the check.

Etheridge unquestionably had the right to accept the check payable to Dunavan, but this did not authorize him to endorse Dunavan's name thereon.

The endorsement itself gave notice that Etheridge was assuming to act as agent. Mitchell v. First National Bank, 203 Ky. 770. Our statute, sections 3720b-19, provides: "The signature of any party may be made by an agent duly authorized in writing." This and similar sections have been construed in a number of cases, and uniformly held to be mandatory. Inter-Sou. L. I. Co. v. First National Bank of Hazard, 178 Ky. 95; Finley v. Smith, 165 Ky. 445; Robinson v. Bank of Winslow, 85 N. E. 794; Jackson Paper Co. v. Commercial Bank, 199 Ill. 154; Bernstein v. Peoples Trust Co., 127 N. Y. S. 1093; Dispatch Packing Co. v. National Bank of Commerce, 109 Minn. 451.

Clearly the savings bank acquired no title to the check by this transaction. The question to be determined is, whether this gave a cause of action to Dunavan against it. Appellant insists that it did not, for the reason that the check in question was never accepted or certified by the bank.

In this it relies upon the following provisions of the statute, *supra*. Subsection 185:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a

bill of exchange payable on demand, apply to a check.''

Subsection 189: ''A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check.''

Subsection 132: ''The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money.''

Subsection 134: ''Where an acceptance is written on a paper other than the bill itself, it does not bind the acceptor except in favor of a person to whom it is shown, and who on the faith thereof, receives the bill for value.''

In considering these sections we have held that, in the absence of a written acceptance, the drawee, bank, is not liable to the holder of a check for the nonpayment thereof, but that in such cases the cause of action exists in favor of the holder as against the drawer; also that the drawer may sue the drawee bank, for failure to honor his check, where he had on deposit a sum sufficient to meet it, but there is not such a privity of contract between the parties as will authorize the holder to sue the bank. Ewing v. Citizens Bank, 162 Ky. 551; First National Bank v. Hargis, 170 Ky. 690.

As stated, Dunavan did not learn of the check until after the above transactions, and when he demanded payment thereof of the savings bank this was refused. It had not been accepted in writing, and from this appellant argues that the facts in this case fall within the principle laid down in the Ewing and Hargis cases, *supra,* and cites B. & O. R. R. v. First National Bank, 102 Va. 753; Elyria Savings & Banking Co. v. W. B. Co., 92 Ohio 406; Hunt v. Sec. State Bank, 91 Ore. 362, as authority for holding that under the facts no cause of action existed in favor of Dunavan against the bank. It is further argued that by the provisions of subsection 145, ''presentment for acceptance must be made by or on behalf of the holder, . . . '' and by subsection 72, ''presentment for payment . . . must be made by the holder or some one authorized to receive payment on his behalf,'' and by subsection 190, ''holder means the

payee or endorsee . . . or the bearer, and bearer means the person in possession of a bill or note which is payable to bearer.''

That if Etherdge had no authority to act for Dunavan he could not present the check for acceptance, and as the check was not payable to bearer, and as he was neither the payee nor endorsee he was not the holder, therefore, he could not have presented the check for payment; consequently, subsections 136 and 137, relied on by appellee as showing an impled acceptance, do not apply. Those sections read:

> Subsection 136: ''The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill; but the acceptance, if given, dates as of the day of presentation.''
>
> Subsection 137: ''Where a drawer to whom a bill is delivered for acceptance destroys the same or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same.''

There is much force in the argument advanced and the authorities cited are entitled to serious consideration, but without entering into a discussion of the relative merits of the conflicting cases, or an elaborate discussion of the statutory provisions, we will be content to state our conclusions and cite some of the authorities in support thereof.

A check can scarcely be presented for payment without an acceptance or refusal in the ordinary sense, and when presented for payment, if, without a refusal, the drawee bank should take and hold it for an unreasonable length of time, it might thereby render itself liable thereon, but we cannot agree with appellee that this would constitute ·an *acceptance* under the provisions of subsections 136 and 137, which refer alone to *presentment* for acceptance, and conclude that there was no technical acceptance of the check, either express or implied.

However, Dunavan was the legal owner of the check; the drawee bank had on deposit to the credit of the drawer sufficient funds to pay it; that bank received the check, admitted its genuineness and admitted liability

thereon by appropriating the funds of the drawer to its payment and charging it to the drawer's account, thus assuming entire control over it and retaining it from the rightful owner. Not only that, but months afterwards, when this suit was brought, it denied all allegations as to the forger's culpability and affirmatively pleaded that he had authority to endorse and collect it, thus still asserting its right to the check as against the true owner. Clearly this constitutes a case of conversion, and as it has appropriated funds deposited to meet it, to the payment of the check, it becomes liable to the owner for that amount for the conversion independent of the statute. Barnes v. Cunningham, 193 Ky. 742; L. & N. v. Cit. & Peo. Bank of Pensacola, 74 Fla. 385; Crake v. Mercantile Savings Bank, 295 Ill. 375; U. S. P. C. Co. v. U. S. National Bank, 157 Pac. 202.

Complaint is made that the court allowed appellee a recovery of $1,200.00. As the original check was $1,400.00, and Etheridge gave his check for $500.00, if the latter was paid out of the former the recovery should have been only $900.00. However, as we have seen, all the institutions were under the same management and permission was given appellant to file a statement of Etheridge's bank account if it desired, and it failed to do so. That account might have shown the fund on which the $500.00 check was drawn, and as Etheridge had collected the $1,700.00 in this transaction, we cannot say that this $500.00 was paid out of the proceeds of the $1,400.00 check, and that the court erred in placing the credit as he did.

Perceiving no error the judgment is affirmed.

Whole court sitting.