30 P.(2d) 728

STATE et al. v. FIRST NAT. BANK OF ALBUQUERQUE.

No. 3829.

Supreme Court of New Mexico.

Jan. 15, 1934.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for appellants.

Bryan G. Johnson and Allen Tonkin, both of Albuquerque, for appellee.

SADLER, Justice.

The appellants, as plaintiffs below, sued the appellee in the district court of Socorro county basing their cause of action upon the following state of facts, to wit:

A certain check of Crown Milling Company of Socorro, payable to the order of one J. B. Kelly in the sum of $515, duly indorsed by him to the order of county treasurer, was delivered to one A. G. Whittier as delinquent tax collector of Socorro county. Within a few months thereafter another check payable to the order of T. G. Padilla (then coun-

ty treasurer of said county) in the sum of $731.48 was delivered into the hands of said A. G. Whittier, as delinquent tax collector aforesaid. The last-mentioned check was signed by one George Goze.

Both checks were drawn upon the defendant bank in which the drawers at the time had funds sufficient to meet the same and when paid were to settle certain taxes due the county. They were never delivered into the hands of the county treasurer. On the contrary, and without authority, they were indorsed in the name of the county treasurer by Whittier and upon presentment to the bank their amounts paid to him. He failed to account to the treasurer therefor.

The plaintiffs prayed judgment against defendant for the aggregate amount of the two checks in the sum of $1,246.48. The latter demurred to the amended complaint which set forth the foregoing facts, upon the following grounds, to wit:

(1) That under the Negotiable Instruments Law, neither the payee of a check nor the holder thereof in due course has a cause of action against drawee bank until acceptance or certification of the check; and (2) that viewed as an attempt to recover in conversion the plaintiffs must fail because the county treasurer was never vested with title to the checks. The trial court sustained the demurrer, and plaintiffs electing to stand on the ruling, the amended complaint was dismissed. It is from the order of dismissal that this appeal is prosecuted.

The defendant practically rests its case before us upon Comp. St. 1929, § 27-295, a part of the Uniform Negotiable Instruments Law, reading: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

It cites an array of cases, most important of which is First National Bank of Washington v. Whitman, 94 U. S. 343, 24 L. Ed. 229, declaring the effect of the principle stated in the foregoing statute. These cases deny a recovery upon the check because of a want of privity between the payee and the drawee. With this principle and its application in the cases cited we have no quarrel. But here the action is not sought to be sustained as one ex contractu, but rather ex delicto for the conversion.

In the Whitman Case the action was upon the draft itself. Certainly the bank had breached no contract with the payee. It sustained no contractual relation toward her. The holding in that case does not support a denial of liability for the bank's wrongful intermeddling with the property of the payee, nor was recovery sought on that theory.

The United States Circuit Court of Appeals for the Fourth Circuit, in Fidelity & Deposit Company of Maryland v. Bank of Charleston, 267 F. 367, 370, makes this plain. After citing the Whitman Case, it said: "When we come to consider the above authorities, we find that the Supreme Court of the United States has decided only that an action ex contractu on the check by payee against the bank before acceptance will not lie, but it

did not decide that an action for conversion could not be maintained. * * * Therefore the real question presented in this case has not been directly passed upon in any decision of the Supreme Court." The court then proceeded to hold that the facts alleged raised an issue which should go to the jury as to whether the defendant was liable for conversion.

Similarly in A. Paul Goodall Real Estate & Ins. Co. v. North Birmingham American Bank, 225 Ala. 507, 144 So. 7, 8, where the Whitman Case and another from Louisiana (M. Feitel House Wrecking Co. v. Citizens' Bank & Trust Co., 159 La. 752, 106 So. 292) to the same effect were cited, the court said: "It appears that the plaintiffs in those cases rested their rights of actions on the checks themselves, and hence privity of contract between the payee and the drawee was essential to a cause of action. Code 1923, § 9207. In the instant case the basis of the plaintiff's cause of action is the wrongful conversion of the check, and, under the law as settled in this state, he could sue in trover for conversion or waive the tort, and sue for money had and received."

"The section in the Negotiable Instruments Law providing that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and that the bank is not liable to the holder unless and until it accepts or certifies the check (section 3098, General Statutes), does not apply. The plaintiff is not suing the bank for breach of a contract in not paying the check. It is suing the bank, because the latter has undertaken to exercise ownership over a check which belonged to the plaintiff without its authority—because the bank had in its possession funds, the proceeds of the check, which it should have paid to the plaintiff, but negligently failed to do so." Louisville & Nashville R. Co. v. Citizens' & Peoples' Nat. Bank, 74 Fla. 385, 77 So. 104, 106, L. R. A. 1918C, 610.

We therefore do not consider the Whitman Case in any sense an authority against a payee's right to recover against a drawee bank for its wrongful act in paying to a stranger the proceeds of the payee's check on a forged or unauthorized indorsement. The great weight of authority, whether before or after adoption of the Negotiable Instruments Law, sustains such a right of recovery. 14 A. L. R. 764, 767, and supplemental case note in 69 A. L. R. 1076, 1078; 33 Harvard Law Review, 269; A. Paul Goodall Real Estate & Ins. Co. v. Northern Birmingham American Bank, 225 Ala. 507, 144 So. 7; Morris & Bailey Steel Co. v. Bank of Pittsburgh, 277 Pa. 81, 120 A. 698; Byrne v. Dennis, 303 Pa. 72, 154 A. 123; Graham v. U. S. Savings Inst., 46 Mo. 186 (form of action not disclosed); Szwento Juozupo, etc., Co. v. Manhattan Savings Inst., 178 App. Div. 57, 164 N. Y. S. 498; Spaulding v. First National Bank, 210 App. Div. 216, 205 N. Y. S. 492, affirmed 239 N. Y. 586, 147 N. E. 206; Kentucky Title Savings Bank & Trust Co. v. Dunavan, 205 Ky. 801, 266 S. W. 667; Louisville & Nashville R. Co. v. Citizens' & Peoples' Nat. Bank, 74 Fla. 385, 77 So. 104, L. R. A. 1918C, 610, with case note.

It is too well settled to admit of controversy that bills of exchange, drafts, and checks may be the subject of conversion.

"Negotiable instruments are chattels, and as such are subjects of conversion as well as any other articles of personal property. And it has been uniformly held that promissory notes are a subject of conversion, as are also bills of exchange, drafts and checks, because by their seizure and their transfer to bona fide holders for value the owner may lose the thing in action which they represent." 65 C. J. 18, § 13, under title "Trover and Conversion." See, also, Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo. App. 287, 177 S. W. 1092, and Good Roads Machinery Co. v. Broadway Bank (Mo. App.) 267 S. W. 40, 42.

"The testimony shows conclusively that there was no contractual relation between plaintiff and defendant. Therefore this action is ex delicto and not ex contractu. The defendant bank has not contracted to pay plaintiff the amount of the check in controversy, but it has wrongfully intermeddled with it to the exclusion of, and disregard for, the rights of the owner, and that constitutes conversion. The term conversion has been defined as 'any distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it.' 2 Cooley on Torts, 859." Good Roads Machinery Co. v. Broadway Bank, supra.

The cases which deny to the payee recovery against the drawee where payment has been made on a forged or unauthorized indorsement seem to be an outgrowth or extension of the doctrine which denies recovery to the payee against the drawee on refusal to pay, prior to acceptance. Upon this question there was from the beginning a sharp division of authority with the weight thereof supporting a denial of recovery. 2 Michie on Banks and Banking, § 140, pp. 1114 to 1118. It is significant, however, that the doctrine arose and developed in cases where the right to sue was invoked upon the failure or refusal of the drawee to honor, prior to acceptance, the check, draft, or other written order upon it to pay, as distinguished from a wrongful payment upon a forged or unauthorized indorsement.

When the latter state of facts arose, and recovery upon the check was sought, it was, of course, but an extended application of the same rule to deny, under the reasoning relied upon, a right of recovery in payee for want of privity. The United States Supreme Court in the Whitman Case held such a state of facts, where recovery was sought upon the draft itself, to be within the proper application of the doctrine originating in actions to recover from drawee for refusal to pay. See 2 Michie on Banks and Banking, 1125, note 27, where the author cites the Whitman Case.

The line of authorities which holds that by reason of want of privity no cause of action upon the check exists in the payee against drawee seems to be supported by the better reason and logic. The authorities sustaining the contrary view do so upon the somewhat fictional hypothesis that the acceptance and payment of the check even on an unauthorized indorsement creates privity and war-

rants action, or that the mere giving of the check operates against the drawee as an assignment pro tanto of the funds of the drawer.

Both our statute, Comp. St. 1929, § 27-295, as well as the decided case of Hanna v. McCrory, 19 N. M. 183, 141 P. 996, commit us against the theory of assignment in so far as the drawee is concerned. We did indicate in Elgin v. Gross-Kelly & Co., 20 N. M. 450, 150 P. 922, L. R. A. 1916A, 711, that as against the drawer the giving of a check for value on an ordinary bank deposit should be considered an assignment of the fund pro tanto.

The resultant is that if the payee seeks recovery ex contractu he not only is faced with the provisions of the Negotiable Instruments Law declaring that the check does not operate as an assignment, thus denying privity, but as well with the formidable array of decisions, representing the great weight of authority even before adoption of the Negotiable Instruments Law, denying recovery under the doctrine expressed in the Negotiable Instruments Law.

"When the payee or holder of a check sues the drawee bank *upon the check*, he generally finds great difficulty in getting away from the principle that there is no privity of contract between the parties. The rule that he cannot recover *upon the check*, since the extensive adoption of the Negotiable Instrument Act, has become practically universal. See note to Ballard v. Home Nat. Bank, L. R. A. 1916C, 161, covering this question. In order that there may be a recovery, where the drawee has paid the check on an unauthorized indorsement, there must be something arising out of the facts or the form of action that will enable the payee to avoid the force of this general rule. When his action is against an intermediary bank,—a bank that has cashed the check on a forged indorsement and collected it,—he does not meet this difficulty for the reason that he must sue for the check or for the proceeds rather than *upon the check*. See cases cited in note to United States Portland Cement Co. v. United States Nat. Bank, L. R. A. 1917A, 148." Case note, L. R. A. 1918C, 613.

The author of the annotation just quoted from indicates a distinction in the payee's right to recover where he sues an intermediary or collecting bank and his rights against the drawee bank. Usually action against the collecting bank is in assumpsit. Universal Carloading & Distrib. Co. v. South Side Bank, 224 Mo. App. 876, 27 S.W.(2d) 768; George v. Security Trust & Savings Bank, 91 Cal. App. 708, 267 P. 560; Independent Oil Men's Ass'n v. Fort Dearborn National Bank, 311 Ill. 278, 142 N. E. 458. But even against the intermediary bank recovery on the theory of conversion is not uncommon. Miller v. Lake View State Bank, 240 Ill. App. 395.

While we have not conducted a roll call of states on the subject, with the possible exception of Michigan (Gordon Fire Works Co. v. Capital National Bank, 236 Mich. 271, 210 N. W. 263), we doubt if there is a single jurisdiction denying payee's right of recovery against the drawee under similar facts where recovery was sought on the theory of conver-

sion. Recovery, to be sure, has been many times denied, but in each instance, as in the Whitman Case, is explainable because the theory of recovery advanced was one ex contractu. The fact that the action was *upon the check* either affirmatively appears from the opinion or is conclusively shown by denial of recovery for want of privity, a thing indispensable in actions ex contractu but wholly immaterial in actions ex delicto.

The cases of State v. Bank of Commerce, 133 Ark. 498, 202 S. W. 834, L. R. A. 1918F, 538, and Dakota Radio Apparatus Co. v. First Nat. Bank (S. D.) 244 N. W. 351, 352, are typical. Recovery by the payee was denied in each case. In the former case, the denial of liability for want of privity, either on the theory of assignment or acceptance by payment on the forged indorsement, clearly demonstrates that the theory presented was one of contract. In the latter case, that such was the theory maintained in the Supreme Court clearly appears from the opinion itself. After mentioning that the form of the complaint was in conversion, the court said: "Plaintiff states in its brief that the allegations of the complaint with respect to the misappropriation of the amount of the check by Krieger are surplusage, and insists on this appeal that the payment of the check shows acceptance by the defendant bank and that the acceptance of the check creates a liability of the bank to plaintiff payee." Thus presented, the court said: "We conclude, therefore, that the charging of the check to the drawer under the facts appearing of record was not the equivalent to the acceptance of a check in writing, and that an action could not be maintained by the payee *on the check* against the defendant bank." (Italics ours.)

■ Recovery on facts amounting to conversion may not correctly be hypothesized on the idea that the bank has misappropriated any moneys or funds belonging to the payee. Were such showing a condition of recovery properly he should fail. It is the conversion by the bank of the payee's property, the check, which gives rise to the action. The fact that the measure of his recovery is prima facie the face value of the paper converted (Kansas City Casualty Co. v. Westport Ave. Bank, supra, and First Nat. Bank v. Montgomery Cotton Mfg. Co., 211 Ala. 551, 101 So. 186, supra)—the measure of recovery, if actionable, on the present facts in contract— does not transform the action into one on contract. On different facts from those here shown the measure of damages in conversion might be less than the amount of the check.

Surely an action in conversion by the true owner of a check against one other than the drawee upon facts concededly amounting to conversion would not for a moment be questioned. The mere coincidence that the wrongdoer chances to be the bank upon which the check is drawn does not absolve it from liability. Nor do we think it was either the purpose or thought of the Negotiable Instruments Law in declaring the relationship, or want of it, of the payee of a check toward the drawee contractually, to license a wrong by the latter upon the former's property rights in a check.

■ If the drawee wrongfully obtains and withholds possession of a check from the

payee, who would question the latter's right to repossess the same in replevin? Certainly,. nothing in the Negotiable Instruments Law would deny him this right. Nor is there any more reason for denying his otherwise obvious right to recover for the conversion of his property in the check.

The demurrer also raised the question of plaintiffs' title to the checks. The position of counsel for defendant is that taxes are payable only to the county treasurer and that: "The delinquent tax collector, to whom a tax payer delivers money or checks for the purpose of paying taxes is the agent of the tax payer and not the agent of the county treasurer, and no title to such checks can vest in the county treasurer until same are delivered by the delinquent tax collector to the county treasurer and duly accepted by said county treasurer in payment of the taxes for which tendered."

The authority of the delinquent tax collector in the premises, and whether he was agent of the taxpayer or of the county treasurer, need not be determined. The state and county could scarcely ratify and affirm more unequivocally his act in receiving the checks than by the institution of the present action. Vanbibber & Co. v. Bank of Louisiana, 14 La. Ann. 481, 74 Am. Dec. 442; Morris & Bailey Steel Co. v. Bank of Pittsburgh, 277 Pa. 81, 120 A. 698. Plaintiffs thus ratified his act in receiving the checks and affirmed title in themselves. Title to the checks was not dependent upon their physical delivery by Whittier to the county treasurer, nor upon a discharge of the taxes for which they were given.

The judgment appealed from will therefore be reversed, and the cause remanded, with directions to the trial court to vacate the same, overrule defendant's demurrer, and for further proceedings in conformity with the views herein expressed. It is so ordered.

WATSON, C. J., and HUDSPETH and BICKLEY, JJ., concur.

ZINN, Justice (dissenting).

Conceding the logic of the theory espoused by the majority, I am still unconvinced and believe it my duty to register dissent.

I refuse to hurdle or build a road around the Negotiable Instruments Law. To permit recovery on the theory of conversion and deny it in assumpsit is simply providing an ingenious legal escort to conduct the true owner of a check to a judgment which I believe the Negotiable Instruments Law prohibits.

As I view the case and the question presented, it is simply a case of where A, a depositor in B bank, draws a check payable to C on B and delivers it to C or his agent, D. D indorses the check and cashes it at B bank. C, admitting that he cannot sue directly on the check or in assumpsit as for money had and received because there is no privity of contract as between C and B, alleges in trover and seeks damages for the conversion.

The case of First National Bank of Washington v. A. F. Whitman, Adm'r, 94 U. S.

343, 24 L. Ed. 229, decides that issue of fact.

I believe that it is consistent with the purpose and spirit of the Negotiable Instruments Law to adopt the view of the United States Supreme Court as laid down in the Whitman Case irrespective of the theory under which the proceeding was instituted. In this there is no hardship. Each party to a check transaction has his remedy. The Negotiable Instruments Law was adopted for the purpose of uniformity, and it is important to the commercial life of this nation that a uniform rule of construction should be adopted by the different jurisdictions in determining the rights of all parties to a negotiable instrument.

To permit recovery in trover and deny it in assumpsit is to circumvent the intended purpose and spirit of the Negotiable Instruments Law, and extend the common-law fiction of pleading in trover to an extent that even the pleaders during the time of Bracton dared not indulge, and with which I am not in accord.

We say to the payee, "You cannot sue in assumpsit, but if you will declare as in trover, we will let you recover." Although we still seek to adhere to common-law modes of distinction as between tort and contract actions, and as between legal and equitable remedies, yet in spirit as a Code state we must look to the redress sought, rather than the form adopted, by the pleader to determine the rights of the parties.

I dissent.