221 So.2d 164 (1969)
Mary ELMORE, Appellant,
v.
PALMER FIRST NATIONAL BANK AND TRUST COMPANY OF SARASOTA, Appellee.
No. 68-301.
District Court of Appeal of Florida. Second District.
March 26, 1969.
*165 Ray Graham, Sarasota, for appellant.
Worth Dexter, Jr., of Dexter, Conlee & Bissell, Sarasota, for appellee.
LILES, Chief Judge.
Plaintiff appeals from an order of the trial judge dismissing her tort action of malicious interference with a business transaction with prejudice.
On May 4, 1966, one James E. Moore executed and delivered to plaintiff-appellant a check for $10,000.00 drawn on defendant bank. In her complaint appellant alleged that at this time there were adequate funds on deposit in the checking account to honor and pay this check; that upon inquiry as to whether the check was good appellant was told to present the check through normal banking channels; that subsequent to this inquiry appellee bank maliciously placed a "hold" on the checking account, transferred the funds from the checking account to the depositor's savings account, and refused payment of the check for insufficient funds; that the depositor did not request that the check be refused; and that because of appellee's interference appellant was unable to collect the full $10,000.00 from the depositor because he subsequently died and appellant was forced to compromise her claim against the estate for $3,300.00 *166 since it was doubtful she could prove consideration.
Appellee's motion to dismiss the complaint was granted on the basis of Fla. Stat. § 676.52 (1965).[1]
On an earlier occasion appellee moved to dismiss this appeal; however, this court deferred consideration of the motion. We first consider that motion.
The order of dismissal was filed on February 16, 1968. Appellant then filed a timely motion to rehear in the trial court on February 20, 1968, which was denied on April 29, 1968. Notice of appeal was filed on June 24, 1968. If the motion to rehear properly tolled the appeal period, the notice of appeal was filed within sixty days from the rendition of the final order as then provided by the appellate rules. F.A.R. 3.2(b), 32 F.S.A.[2] Upon consideration, this court now holds that the motion to rehear did properly toll the time period and that the notice of appeal was timely. The motion to dismiss is denied.
Appellee argues that the motion to rehear in this case was not "proper" or as "permitted by the Rules" and thus did not toll the appeal period. See F.A.R. 1.3. However, we hold that it was proper and timely as envisioned by F.R.C.P. 1.530, 31 F.S.A. Appellee argues that this motion was not directed at an issue of fact and was merely an attempt to prevail upon the judge to reconsider his holdings of law. This is because the judge dismissed plaintiff's case on the pleadings. It argues that a motion to rehear is traditionally a rule of equity practice which is proper when the trial judge hears the case in the absence of a jury. It is appellee's contention that since this is an action at law and not equity this equity practice should not be applied under the newly consolidated law and equity rules.
On the contrary, under modern rules of practice a motion to rehear is not merely a vehicle by which the trial judge can reconsider facts alone; rather, it provides a chance for the trial court to correct any error that it committed if it becomes convinced that it has erred. Since it is clearly within the trial court's power to alter a judgment for a limited period, see F.R.C.P. 1.530, a timely motion asking the court to do so is proper. See Floyd v. State ex rel. La Vigne Elec. Co., Fla. 1962, 139 So.2d 873; Kippy Corporation v. Colburn, Fla. 1965, 177 So.2d 193; Pensacola Chrysler-Plymouth, Inc. v. Costa, Fla.App., 195 So.2d 250, cert. denied, Fla. 1967, 204 So.2d 211.
Turning to the merits of this appeal, the trial court held that this action for malicious interference with business transaction was barred by Fla. Stat. § 676.52, a section of the negotiable instruments law which then provided:
"When bank becomes liable.  A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank; and the bank is not liable to the holder, unless and until it accepts or certifies the check."
Appellant readily admits that were this a suit in contract this statute would bar the action. She maintains, however, that since this is an action in tort this statute is not applicable. This argument must be rejected as a thinly veiled attempt to thwart the intended effect of this statute.
It can be seen that the facts of this case are no different than the facts that would be necessary to make out a cause of action in contract if the drawee did owe a contractual duty to payee to honor the payor's check. Since the appellant has sought to take the mere fact of refusal to honor the check by the appellee bank and to plead it as a cause of action in tort instead *167 of contract, it appears that she is trying to circumvent the intended effect of this statute. Were this cause of action in tort allowed to proceed in spite of this statute the effect would be to completely negate the purpose and effect of this statute. It is readily apparent that any refusal to honor a check by a bank, precisely the activity authorized by this statute with regard to the payee of that check, could also be said to constitute an interference with business relations.
As one textual authority states:
"In most jurisdictions the bank is under no legal obligation to the payee or holder of a check, unless there be special circumstances, such as its acceptance or certification of the check. A bank which is merely the drawee of a check is under no contractual duty to the payee to see that the check is paid to the payee or to someone authorized by him to receive payment, but any liability of the bank to the payee is required to be based on tort. And the bank should not be made liable to the payee for anything short of participation or assistance in a known or apparent misappropriation of funds by the representative of the payee having authority to collect or cash such check." 5A Mitchee, Banks & Banking § 198 (1950).
This is the rule in Florida as provided by this statute.
The point is this: The payee of the check is not in privity with the drawee bank "unless and until" the drawee bank accepts or certifies the check and cannot sue on the check. The payor-drawer of the check does have a cause of action against the drawee if it refuses to honor his check. Mr. Moore could have sued were he alive and desired to do so in this case. The payee, however, does not stand in the payor's shoes.
This case falls short of any of the "special circumstances" referred to above. Here there has been no acceptance or certification, and the tort of malicious interference bears no resemblance to the more serious torts alluded to above.
Appellant cites several tort theory cases allowing recovery in spite of this or similar statutes. Louisville & N.R. Co. v. Citizens' & Peoples' Nat. Bank, 1917, 74 Fla. 385, 77 So. 104, L.R.A. 1918C, 610; Lewis State Bank v. Raker, 1939, 138 Fla. 227, 189 So. 227. See also State v. First Nat. Bank of Albuquerque, 1934, 38 N.M. 225, 30 P.2d 728; Jomack Lumber Co., Inc. v. Grants State Bank, 1966, 75 N.M. 787, 411 P.2d 759; Modern Homes Const. Co. v. Tryon Bank & Trust Co., 1966, 266 N.C. 648, 147 S.E.2d 37. However, our review of these cases reveals that all involve instances where the drawee bank paid funds on the check to one who had endorsed the check but did not have authority to do so. In this instance the bank was held liable on a conversion theory. It is obvious that these cases are distinguishable from the present case.
A case with facts close to those of the present case is First Nat. Bank of Jackson v. Hargis Commercial Bank & Trust Co., 1916, 170 Ky. 690, 186 S.W. 471. Here the drawee had simply refused to pay on a check even though the checking account contained sufficient funds to cover the check. Realizing that a similar statute in Kentucky would var the action on a contract theory, the payee adopted the conversion theory in an effort to circumvent the statute. He simply argued that even though the drawee was under no duty to honor the check, he was entitled to damages resulting from the drawee bank's failure to pay on the check. The court pointed out the fallacy of this argument by stating:
"This contention is illogical and without authority in law. Manifestly, if an action would not lie against appellee for its failure to pay the check it would not be liable for damages for such failure." 186 S.W. at 472.
As the Florida Supreme Court had occasion to say in another case construing this *168 statute where the plaintiff was proceeding under a fraud theory
"The statute contains no exception; it clearly states that `* * * the bank is not liable to the holder, unless and until it accepts or certifies the check.'" Gartner v. American Nat. Bank of Jacksonville, Fla. 1952, 58 So.2d 705, 708.
Therefore the tort theory of malicious interference with a business transaction cannot be utilized to circumvent the purpose and effect of Fla. Stat. § 676.52 (1965).
Affirmed.
MANN and McNULTY, JJ., concur.
NOTES
[1] This section has been superseded by the Uniform Commercial Code, Section 673.3-409, F.S.A., effective January 1, 1967.
[2] F.A.R. 3.2(b) now provides that appeals must be commenced within 30 days from the rendition of the order under appeal.