348 So.2d 643 (1977)
The BARNETT BANK OF TALLAHASSEE, a Florida Banking Corporation, Appellant (Plaintiff),
v.
CAPITAL CITY FIRST NATIONAL BANK, a National Banking Corporation, Godfrey Smith, S.E. Teague, Jr., Homer A. Brinkley; and Bernard Shiell, Appellees (Defendants).
No. BB-21.
District Court of Appeal of Florida, First District.
August 1, 1977.
Julius F. Parker, Jr., of Madigan, Parker, Gatlin, Truett & Swedmark, Tallahassee, for appellant.
C. Gary Williams, of Ausley, McMullen, McGehee, Carothers & Proctor, Helen C. Ellis of Keen, O'Kelley & Spitz, Dexter, Douglass, of Douglass & Powell, Tallahassee, Talbot D'Alemberte, of Steel, Hector & Davis, Miami, for appellees.
*644 MILLS, Judge.
Barnett Bank of Tallahassee (Barnett) appeals from a final summary judgment entered in favor of Capital City First National Bank (Capital City) and appeals from an order entered in favor of Smith, Teague, Brinkley and Shiell dismissing Count III of its corrected amended complaint with prejudice.
The issues raised by this appeal are whether the trial court erred in entering the summary judgment and the order of dismissal.
On 19 June 1974, Commonwealth Corporation (Commonwealth), which was not a party to this action, delivered a check in the amount of $61,345.00 to Barnett. The check was payable to Barnett and drawn on Commonwealth's account at Capital City. The check was routinely forwarded to Capital City for collection. On 21 June, an official of Capital City called Barnett to advise that the check was being dishonored and returned to Barnett. The check was stamped "drawn against uncollected funds".
On 20 June, prior to the check being dishonored, Smith, President of Capital City, received a call asking him to attend a meeting at the Commonwealth offices. The meeting was attended by Smith, Shiell, President of Commonwealth, Teague and Brinkley, directors of both Commonwealth and Capital City, Lewis, President of Lewis State Bank, and others. At the meeting Shiell announced that Commonwealth was having severe cash flow problems and would need a substantial loan (two and one-half million dollars) by the close of business the next day (21 June). The loan was needed to cover checks that were outstanding and were expected to hit the bank on the 21st.
When Smith returned to his office at Capital City, he consulted his legal counsel, then proceeded to take action to protect Capital City from possible loss. This action included recording assignments of mortgages that were previously unrecorded, examining Commonwealth's account, and finally dishonoring checks drawn against Commonwealth's account, one of which was the check payable to Barnett.
Barnett's corrected amended complaint was based on three counts.
Count I alleged that Capital City wrongfully and illegally dishonored the check payable to Barnett in that (a) there were adequate funds on deposit in Commonwealth's account to pay the check and the check would have been routinely honored and paid but for information obtained by Capital City through its directors, Teague and Brinkley, by virtue of their dual positions as directors of both Capital City and of Commonwealth, or, in the alternative (b) the check was in fact routinely paid and debited against Commonwealth's account on 20 June, and having paid the check, Capital City is accountable to Barnett for the amount of the item pursuant to Section 674.213(1), Florida Statutes (1973).
Count II alleged that because of Capital City's superior knowledge, Capital City was able to defraud Barnett by routinely sending out for collection items pertaining to Commonwealth and payable to Capital City or Commonwealth's accounts with Capital City, while at the same time dishonoring all checks drawn on it by Commonwealth.
Count III alleged that Capital City, Smith, Teague, Brinkley and Shiell conspired to defraud Barnett by revealing to Smith that Commonwealth had written checks for several million dollars for which checks Commonwealth did not have sufficient funds on deposit.
After the corrected amended complaint was filed, Capital City moved for summary judgment and the individual defendants moved for dismissal of Count III of the corrected amended complaint. Both motions were granted and this appeal ensued.
The real issue presented by Count I is whether the Barnett check was "paid". Whether there were adequate funds in Commonwealth's account to pay the check is not a material fact because a payor bank owes no duty to the payee of a check to pay the item, unless the check has been accepted. Section 673.409(1), Florida Statutes *645 (1973), and Elmore v. Palmer First National Bank and Trust, 221 So.2d 164 (Fla.2d DCA 1969). However, once final payment has been made, the payor bank is accountable for the amount of the item. Under Section 674.213(1)(c), Florida Statutes (1973), an item is finally paid when the payor bank has "... completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith... ." Section 674.109, Florida Statutes (1973), defines the process of posting as:
"... [T]he usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:

(1) Verification of any signature;
(2) Ascertaining that sufficient funds are available;
(3) Affixing a `paid' or other stamp;
(4) Entering a charge or entry to a customer's account;
(5) Correcting or reversing an entry or erroneous action with respect to the item." (Underlining supplied)
Therefore, under Florida law and the Uniform Commercial Code, Barnett's check could not have been "paid" unless the last step in the procedure usually followed by Capital City in determining to pay an item had been taken. Russell Grosvenor, Assistant Vice-President of Capital City, gave undisputed testimony concerning Capital City's payment procedure. It is unnecessary to outline all the steps taken in the payment procedure, since prior to final payment all checks are stamped "paid" across the face of the check. A signature check is made after the paid stamp is affixed. Barnett's check does not have "paid" stamped across the face of the check and the back of the check is stamped "drawn against uncollected funds". It is clear that Barnett's check never went through the final steps in Capital City's payment process. It therefore follows that the process of posting was never completed and thus final payment was never made.
Count II which is based on fraud and Count III which is based on conspiracy to defraud fail to state a cause of action for fraud or conspiracy to defraud. As stated in Kutner v. Kalish, 173 So.2d 763 (Fla.3d DCA 1965):
"In order that fraud be actionable the following elements must be made to appear:
(1) a misrepresentation of material fact,
(2) [a] knowledge of the representor of the misrepresentation, or, [b] representations made by the representor without knowledge as to either truth or falsity, or, [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof,
(3) an intention that the representation induce another to act on it, and
(4) resulting injury to the party acting in justifiable reliance on the representation."
Neither Count II nor Count III alleges a misrepresentation of a material fact by Capital City or any of the individual defendants. Barnett did allege that Capital City's actions in routinely sending out for collection all items pertaining to Commonwealth, payable to Capital City or Commonwealth's account with Capital City, after Capital City had learned of Commonwealth's financial difficulties, constituted an affirmative misrepresentation to other banks, including Barnett. Whether the routine sending of items for collection could ever be considered to constitute a misrepresentation need not be determined by this appeal, for it is clear that even if the actions could be construed as a misrepresentation, Barnett's injury was not a result of its reliance on such representation. Barnett's injury resulted from Barnett's reliance on Commonwealth's good name and reputation. On 19 June, Barnett took the $61,345.00 check from Commonwealth and in return reassigned to Commonwealth a mortgage previously held by Barnett as partial security for Commonwealth's loans. It was not until late in the afternoon of the following day that Capital City learned of Commonwealth's financial difficulties. The *646 fact that Capital City returned the check after being informed of Commonwealth's problems, even the fact that the check might have been routinely paid if the information had not been received, does not in any way transform the dishonor of the check into a perpetration of fraud.
Since the record is bare of any facts from which even an inference may be drawn to establish a cause of action for fraud, and since, as discussed previously, the undisputed facts clearly show that final payment was never made on Barnett's checks, the summary judgment entered in favor of Capital City is affirmed.
Since Count III of the corrected amended complaint did not state a cause of action for conspiracy to defraud, the order dismissing the corrected amended complaint with prejudice is also affirmed.
McCORD, C.J., and BOYER, J., concur.