BOOTH, Judge.
This cause is before us on appeal from a final judgment awarding appellee Waites Cabinet Corporation $13,036.32, from appellant Southeast Bank, N.A., based on the bank’s improper dishonoring of a check.
Appellant is a depositary institution operating under the regulations of the Federal Reserve System, 12 Code of Federal Regulations, Section 210, and Article IV of the Uniform Commercial Code (UCC) as adopted in Chapter 674, Florida Statutes. Appellant’s Jacksonville office uses a “clearinghouse” operation, under which the Federal Reserve Bank of Jacksonville (FRB) presents checks written by appellant’s customers to appellant for processing. FRB debits appellant’s account with FRB in the amount of the checks written by appellant’s customers. Pursuant to Chapter 674 and 12 Code of Federal Regulations, Section 210 (Regulation J), appellant bank has until midnight of the next banking day following receipt of a check from FRB to make final payment of, or to return, any item dishonored by appellant.
On November 27, 1985, appellant’s customer Hudnall, Inc., d/b/a Kitchen Artistry, wrote a $10,000 check payable to appel-lee, which check was ultimately received by FRB of Jacksonville. FRB duly presented the check to appellant for payment on December 9, 1985. Upon receiving the check, appellant endorsed the back of the check with a stamp imprinted “December 9, 1985, Paid Southeast Bank, N.A.” and paid the Federal Reserve by cash letter. Appellant’s account with FRB was immediately *160 debited in the amount of the cash letter. When appellant processed and posted the check against the customer’s account, however, appellant discovered that there were uncollected funds in the account. Accordingly, the check was stamped “cancellation rescinded Southeast Bank, N.A.” and returned to FRB via a cash return letter dated December 10. FRB then credited appellant’s account.
On September 8, 1986, appellee filed a complaint against appellant and Hudnall, Inc., d/b/a Kitchen Artistry, alleging that Southeast wrongfully dishonored the $10,-000 check presented to Southeast by FRB, and drawn on Kitchen Artistry’s account with Southeast. Hudnall was dismissed from the cause as a defendant, a trial was held, and the trial judge entered a final judgment in favor of appellee. In his final judgment, the trial judge indicated that a factor in determining that appellant unconditionally paid the check was appellant’s admission in its response to request for admissions that it paid the check on December 9, 1985. Appellant’s motions for rehearing or, alternatively, to alter final judgment and to amend the response to request for admission were denied.
The issues on appeal are whether the court erred: (1) in not allowing appellant to amend its response to requests for admission and (2) in ruling that appellant’s endorsement constituted final, unconditional payment of the check.
We find no error in the trial court’s ruling denying appellant’s motion to amend its response to requests for admission. However, we hold the court erred in ruling that appellant’s endorsement constituted final, unconditional payment of the check.
Section 674.213, Florida Statutes, provides:
(1)An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
(a) Paid the item in cash; or
(b) Settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearinghouse rule or agreement; or
(c) Completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
(d) Made a provisional settlement for the item and failed to revoke the settlement in a time and manner permitted by statute, clearinghouse rule or agreement and has not returned the item directly to the depositary bank within the time and manner provided in s. 674.212(2). Upon a final payment under paragraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.
Subsection (l)(a) is inapplicable since appellant did not pay cash, all transfers being by means of debits and credits. Appellant had a right under statute, clearinghouse rule, or agreement to revoke the settlement, so subsection (b) is inapplicable. Appellant did not complete the process of posting referred to in subsection (c), as will be explained more fully, nor did it fail to revoke the settlement within the proper time as indicated by the credit receipt from FRB to appellant dated December, 10, 1985. Therefore, none of the subsections in Section 674.213(1) are applicable.
The main issue before us is whether the process of posting was completed. Section 674.109, Florida Statutes, defines the “process of posting” as follows:
The “process of posting” means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or. other steps as determined by the bank:
(1) Verification of any signature;
(2) Ascertaining that sufficient funds are available;
(3) Affixing a “paid” or other stamp;
(4) Entering a charge or entry to a customer’s account; and
(5) Correcting or reversing an entry or erroneous action with respect to the item, [emphasis added]
Appellant contends that under subsection (5), posting is not complete until the midnight deadline found in 12 Code of Federal *161 Regulations, Section 210.12.[1] Appellee contends the trial court properly found that posting was complete upon the bank’s stamping the check paid and debiting the customer’s account. Neither party’s contention is correct under Barnett Bank of Tallahassee v. Capital City First National Bank, 348 So.2d 643 (Fla. 1st DCA 1977), and Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank, 832 F.2d 1005 (7th Cir.1987), cert. denied, 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988).
In Merrill Lynch, supra, the court held the payment of a check is final at the completion of the bank’s ordinary process, whatever that ordinary process may be. The court further held that under Section 4-213(l)(c) of the UCC, final payment should not take any longer than the bank actually requires to process each item. The Merrill Lynch court explained its ruling as follows (832 F.2d at 1010):
Section 4-109 [the UCC equivalent to Section 674.109, Florida Statutes] allows a bank to follow its ordinary processes .... There is nothing magical about putting the instrument in the customer’s file_ [S]uppose the bank verifies signatures and puts the checks (stamped “paid”) in customers’ files before examining the computer printouts for stop payment orders. Again it would not be important that the bank had to remove the stopped check from the customer’s file. The alternative — holding all checks in stasis until each of the bank’s steps had been completed — would delay “final payment” for the checks as a group even longer, contrary to the purpose of § 4-213(l)(c). [emphasis in original]
This court, in Barnett Bank of Tallahassee v. Capital City First National Bank, supra, held there was no final payment where the payor bank never went through the final steps in the payment process, holding (348 So.2d 645):
Therefore, under Florida law and the Uniform Commercial Code, Barnett’s check could not have been “paid” unless the last step in the procedure usually followed by Capital City in determining to pay an item had been taken.
In the Barnett case, testimony established that the last two steps in the bank’s normal procedure, stamping “paid” and a signature check, had not been performed, and therefore the court ruled there was not payment.
In the instant case, although appellant paid FRB pursuant to 12 Code of Federal Regulations, Section 210.9(a),[2] stamped the check “paid,” and debited the customer’s account, appellant never went through the final steps in the payment process. Jane Walker, appellant’s area operations manager, testified to the standard operating procedure as follows:
We are on a pay all system. We pay all checks that come into our system, [using] the Federal cash letter. If you can picture thousands of checks coming into our operation center, we go ahead and post them to the customers [sic] account, you know, add them all up. Let them post and pay on the customers [sic] account so we can know what their balance is after paying all items. Then the next day when we get all our reports out and see all the checks paid on account, we can tell if they’re [sic] uncollected insufficient funds because they would have gone to a negative balance. And at *162 that time, we then return anything that we can’t pay.
JUDGE ADAMS: Explain to me what makes that procedure provisional. Why isn’t it final when you pay it?
THE WITNESS: Well, how can we know what we need to pay until we actually post it to the account.
THE JUDGE: If a checks [sic] come in for $10,000 and you stamp it “paid” and then post it to your customers [sic] account why isn’t that final?
THE WITNESS: With our procedure, we just don’t make it a final payment until we’re sure the funds are available and collected.
Here, appellant followed its normal processing procedure. Under that procedure, payment was provisional until the account was checked, at which time appellant properly returned the check before the midnight deadline. No final payment was made. Accordingly, the final judgment below is reversed, and the case is remanded with directions that judgment be entered for appellant.
THOMPSON and NIMMONS, JJ., concur.

. 12 Code of Federal Regulations, Section 210.-12, provides:
(a) Recovery of payment. A paying bank that receives a cash item directly or indirectly from a Reserve Bank, other than for immediate payment over the counter, and that pays for the item as provided in § 210.9(a) of this subpart, may recover the payment if, before it has finally paid the item, it:
(1) Returns the item before midnight of its next banking day following the banking day of receipt; ....

. 12 Code of Federal Regulations, Section 210.-9(a), provides, in pertinent part:
A paying bank becomes accountable for the amount of a cash item received directly or indirectly from a Reserve Bank at the close of the paying bank’s banking day on which it receives the item if it retains the item after the close of that banking day, unless, prior to that time, it pays for the item by:
(i) debit to an account on the Reserve Bank’s books.