**In re TOM STIMUS CHRYSLER PLYMOUTH, INC., Debtor.**

**Bankruptcy No. 91–7864–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 30, 1992.

See also 134 B.R. 676.

David W. Steen, Tampa, FL, for debtor.

Robert A. Soriano, Tampa, FL, for movant.

Mark J. Bernet, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Tampa, FL, U.S. Trustee.

## ORDER AUTHORIZING SETOFF

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties in interest to consider whether Southeast Bank, N.A. (Southeast) is entitled to setoff $19,500.00 currently in an account of Tom Stimus Chrysler–Plymouth, Inc. (Debtor) maintained with Southeast. This Court has entered orders lifting the automatic stay regarding Southeast's collateral, and permitting Southeast to setoff all funds in excess of the amount of $19,500.00 from any accounts with Southeast maintained by the Debtor, but has retained jurisdiction to consider Southeast's right to the $19,500.00 in question. Upon consideration of the record, this Court is satisfied that Southeast is entitled to setoff these funds for the following reasons:

At the time of the commencement of this case, the Debtor was indebted to Southeast in a principal amount in excess of $4.2 million. Of this amount, $1,077,097 was the result of pre-petition "out of trust" sales of Southeast's collateral. Post-petition, the Debtor again sold vehicles subject to Southeast's lien and failed to remit the proceeds of Southeast's collateral to Southeast.

On June 14, 1991, the date of the commencement of this case, the Debtor maintained a bank account with Southeast. On that date, the Debtor issued a check payable to "First Union Bank" (First Union) in the amount of $19,500.00. The check was deposited with First Union on June 14, 1991, and presented for payment to Southeast on June 17. The check was initially stamped "Paid" by Southeast on June 17, but that entry was reversed the same day and the check returned to First Union in part because there were insufficient funds in the Debtor's account with Southeast, as well as because of Southeast's pending Motion for Relief from Stay and Adequate Protection. The check shows Southeast's stamp indicating the check was "Returned Not Paid", with "Uncollected Funds" circled within the stamp, and the category "Other" checked. In support of its position, Southeast claims that it is entitled, pursuant to 11 U.S.C. § 553, to offset the funds in the Debtor's account with Southeast against the Debtor's obligations to Southeast.

■  In opposition, the Debtor argues that because Southeast originally stamped the check "Paid" and because Southeast subsequently paid five checks ranging from $10.00 to $1,797.20 drawn on the Debtor's account with Southeast, it should be required to pay $19,500 to the Debtor, notwithstanding the fact that the Debtor owes pre- and post-petition amounts to Southeast for "out of trust" sales.

■  In resolving this dispute, it is important to note that pursuant to *Fla.Stat.* § 674.303, while a payor bank is processing a check for payment, the bank may refuse to pay the check because the bank has received a legal notice affecting the check or has chosen to exercise its right of setoff against the drawer's account. Essentially, pursuant to § 674.303, if a payor bank has not accepted or certified a check, has not evidenced by its actions its intention to pay the check, and has not made final payment of the check, the bank has no duty to pay the check.

*Fla.Stat.* § 674.213(c) and (d) provide that a check is finally paid by a payor bank when the bank has "completed the process of posting the item to the indicated account of the drawer" as fully set forth in § 674.-109, or has made "provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearinghouse rule or agreement and has not returned the item directly to the depository bank" in a timely manner. In turn, *Fla.Stat.* § 674.109 defines the process of posting as:

"... [T]he usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as *determined by the bank:*

(1) Verification of any signature;

(2) Ascertaining that sufficient funds are available;

(3) Affixing a 'paid' or other stamp;

(4) Entering a charge or entry to a customer's account;

(5) Correcting or revising an entry or erroneous action with respect to the item."

The process of posting set forth in § 674.109 consists of two elements—the decision to pay an item and the appropriate mechanical steps to record the item. *Barnett Bank v. Capital City First National Bank,* 348 So.2d 643 (Fla. 1 DCA 1977). The court in *Barnett Bank* specifically stated that pursuant to the Uniform Commercial Code and Florida law, an item cannot be finally paid until the last step in the particular payor bank's posting procedure has been completed. *Id.* at 645. The court in *Barnett Bank* further noted that whether the process of posting has been completed in a given case depends upon whether the bank has followed its usual procedure in determining to pay an item and in recording payment, and whether the appropriate steps in the procedure have been completed. The court in *Barnett Bank, supra,* pointed out that because affixing a "paid" stamp to a check may not be the final step in the particular bank's posting procedure, a check stamped "paid" may not be *finally* paid as defined in *Fla.Stat.* § 674.213, and the check need not be honored. *See also Southeast Bank v. Waites Cabinet Corp.,* 558 So.2d 159 (Fla. 1 DCA 1990).

In this case, stamping the check "paid" was not the final step in Southeast's posting process, as Southeast never made the decision to pay the check. After stamping the check, Southeast determined not to pay the check because of insufficient funds and a pending Motion for Relief from Stay or for Adequate Protection. Until the payment determination was made, the check was not finally paid pursuant to *Fla.Stat.* § 674.213, and Southeast could properly dishonor the check pursuant to *Fla.Stat.* § 674.303.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the automatic stay is lifted to permit Southeast to setoff $19,500 in the Debtor's account maintained at Southeast.

DONE AND ORDERED.