PER CURIAM.
Appellant challenges a summary judgment that ended her class action lawsuit against Appellee. She claims that Appel-lee’s policy of charging a $5 service fee to cash a check drawn on one of its accounts violates section 655.85, Florida Statutes (2009). That statutory provision requires *231 banks to settle all checks at par value, which means face value. The trial court ruled that section 655.85 did not apply to the transaction here. Alternatively, the trial court concluded that, even if the statute did apply to this transaction, it was preempted by federal law allowing banks to charge such fees. We reverse.
F. Joseph Desreux issued a $1,700 check to Appellant, drawn on Desreux’s checking account at Appellee, a North Carolina state-chartered bank. Appellant presented the check for cashing at one of Appel-lee’s Florida branches. Because Appellant did not have an account with Appellee, it charged her a $5 check-cashing fee as a condition to cashing the check. Appellant filed a class action lawsuit against Appel-lee, alleging that it had violated section 655.85 by settling her check for less than par value. Upon Appellee’s motion, the trial court granted summary judgment, concluding that: (i) section 655.85 only applies to bank-to-bank transactions, and (ii) even if section 655.85 applies to transactions with individuals, it is preempted by federal law that allows national banks to charge such fees, and that such preemption extends equally to out-of-state state banks pursuant to 12 U.S.C. § 1831a(j)(l). Although not a basis for the trial court’s ruling, Appellee also argued below and on appeal that the requirement to settle all checks at par value contained in section 655.85 does not apply because of an express exception for checks presented by the “payee in person.”
We first address the arguments concerning the applicability of the statute. Our conclusion of which is governed by the unambiguous text of the statute. Section 655.85, entitled “Settlement of Checks,” states in pertinent part:
Whenever any check is forwarded or presented to an institution for payment, except when presented by the payee in person, the paying institution or remitting institution may pay or remit the same, at its option, either in money or in exchange drawn on its reserve agent or agents in the City of New York or in any reserve city within the Sixth Federal Reserve District; however, an institution may not settle any check drawn on it otherwise than at par.
(Emphasis added). The statute is composed of two clauses. The first clause authorizes a bank to use an exchange system for payment, rather than a payment in money. Understandably, it excepts from this option a check that is presented “by the payee in person.” Thus, when a check is presented to the drawee bank by the payee, it must be paid in money. The second clause addresses whether a bank may “settle”- (pay) a check for less than par value. It does not except anyone or any check from its application. Irrespective of how the check is settled, the plain language of the second clause requires that the check be settled for no less than par.
Appellee urges that the second clause should be construed to incorporate the same exception expressed in the first clause. In other words, Appellee seeks a construction that construes the phrase “any check” to mean “any check, except one that is presented by the payee.” Both parties argue about the grammatical significance of the use of a semicolon to separate the two clauses, each contending that the use of the semicolon compels their proffered construction. No matter which grammatical convention is applied, we conclude that the statute plainly contains two distinct clauses that address two distinct issues. The prohibition against paying less than par clearly applies to “any check,” without exception.
Appellee’s alternative argument is that section 655.85 only applies in bank-to- *232 bank transactions. In support of this contention, Appellee traces the historical development of the check-clearing exchange system. It highlights the struggle between states and the Federal Reserve Board regarding exchange fees charged by banks for clearing checks. According to commentary Appellee cites, the states that had initially resisted the Federal Reserve Board’s prohibition against such exchange fees eventually capitulated. Appellee contends that section 655.85 is the end result, and it should be interpreted in light of this historical backdrop. Appellant counters that we need not and should not consider any extrinsic evidence of what was intended because the statute is clear. Alternatively, she urges that the history cited by Appellee is not “legislative history,” meaning that it is not the product of the Florida Legislature, thus is too attenuated to be a reliable source for legislative intent. We need not address Appellee’s alternative argument because we conclude that the statute is unambiguous. See, e.g., Aetna Cas. & Sur. Co. v. Huntington Nat’l Bank, 609 So.2d 1315, 1317 (Fla.1992) (“The legislative history of a statute,is irrelevant where the wording of a statute is clear.”). Accordingly, we construe the statute literally-[1]
The next issue we must consider is the applicability of 12 U.S.C. § 1831a(j)(l), which provides, in pertinent part:
(j) Activities of branches of out-of-state banks
(1) Application of host state law
The laws of a host State, including laws regarding community reinvestment, consumer protection, fair lending, and establishment of intrastate branches, shall apply to any branch in the host State of an out-of-State State bank to the same extent as such State laws apply to a branch in the host State of an out-of-State national bank. To the extent host State law is inapplicable to a branch of an out-of-State State bank in such host State pursuant to the preceding sentence, home State law shall apply to such branch.
(Italics emphasis added). Appellee argues that this statute essentially confers upon it the same status as a national bank. It argues that, because section 655.85 is not applicable to national banks, it cannot be enforced against Appellee, an out-of-state state bank. The fallacy in this argument is that it contorts the express language of the statute. This statute simply prohibits states from discriminating against out-of-state state banks. It requires that laws of the host state apply to out-of-state state banks to the same extent that they apply to national banks. This statute has no applicability here because section 655.85 applies by its terms to all banks. It does not differentiate between national banks and out-of-state state banks. The only reason that section 655.85 does not apply to national banks is because a different federal statute permits national banks to charge a fee and that statute preempts the state law. See Britt v. Bank of Am,., N.A., *233 52 So.3d 809, 810 (Fla. 5th DCA 2011).[2] REVERSED AND REMANDED.
SAWAYA, J., and MAHL, J., Associate Judge, concur.
TORPY, J., concurs and concurs specially with opinion.

. To accept Appellee's argument, we would have to conclude that no part of section 655.85 applies to individuals. In other words, the entire statute was intended to only address exchanges between banks through the check-clearing system. One obvious problem with this argument is that the exception contained within the first clause for payees who appear at the bank in person to cash a check would be surplusage. If the statute was only intended to address check clearing between banks, the exception is not needed. We are not supposed to reach a construction that reduces language in a statute to mere surplus-age. See Mendenhall v. State, 48 So.3d 740, 749 (Fla.2010) (court must give effect to every word in statute and avoid construction that renders words mere surplusage).

. We note parenthetically that were we to accept the interpretation advocated by Appel-lee, the result would be that a state bank may receive more favorable treatment than its home state affords simply by establishing branches across the borders of another state. Nothing in the language of this statute manifests that intent.