TORPY, J.
We address for the second time a controversy between a payee on a check and the drawee bank regarding the propriety of a service charge for cashing the check when it is presented in person. In Baptista v. PNC Bank, National Ass’n, 91 So.3d 230 (Fla. 5th DCA 2012), we addressed a similar controversy involving similar facts. We held that section 655.85, Florida Statutes (2009), prohibits a bank from charging such a fee. We also held that 12 U.S.C. § 1831a(j)(l) does not preempt the state statute. Although this case involves similar facts, we are asked to confront differ *846 ent legal arguments. The trial court ⅛ this case concluded that 12 U.S.C. § 1831a(j)(2) (a statutory subsection not addressed in Baptista) preempts section 655.85, Florida Statutes (2012). It also concluded that section 655.85 affords no private cause of action. For these reasons, the trial court dismissed Appellant’s section 655.85 claim, as well as other statutory claims and a claim for unjust enrichment. We affirm.
The federal statute at issue here, 12 U.S.C. § 1831a(j)(2) (2012), is contained within Chapter 16 of the United States Code, which pertains to the Federal Deposit Insurance Corporation. That statutory provision is entitled, “Activities of Insured State banks,” and provides:
§ 1831a. Activities of insured State banks
[[Image here]]
(j) Activities of branches of out-of-State banks
[[Image here]]
(2) Activities of branches
An insured State bank that establishes a branch in a host State may conduct any activity at such branch that is permissible under the laws of the home State of such bank, to the extent such activity is permissible either for a bank chartered by the host State (subject to the restrictions in this section) or for a branch in the host State of an out-of-State national bank.
12 U.S.C. § 1831a(j)(2) (2012).
“Activity” is a term of art, which is “defined” as “includ[ing] acquiring or retaining any investment.”[1] 12 U.S.C. § 1831a(h) (2012). The major subsections within § 1831a address specific types of prohibited investment activities for insured state banks. The upshot of § 1831a is that it prohibits insured state banks from investment activities that are also prohibited for national banks. See 12 U.S.C. § 1831a(a)(l) (2012). The obvious purpose of this statutory scheme is to protect the FDIC coffers by restricting risky investment activities of insured state banks. By mandating that state banks not engage in certain investment “activities,” Congress established a ceiling on these activities but not the floor. 12 U.S.C. § 1831a(i) (2012) expressly provides that “[12 U.S.C. § 1831a] shall not be construed as limiting ... any State supervisory authority to impose more stringent restrictions” on state banks. Accordingly, states may not lessen restrictions on “activities” placed on insured state banks under the federal statutory scheme but they are not preempted from imposing more stringent ones. When the statutory definition of “activity” is used to interpret § 1831a(j)(2), it is clear that this federal statute has nothing to do with the state statute at issue here. Section 655.85 does not pertain to the acquisition or retention of an investment. It simply mandates that checks be settled at “par,” meaning face value.
The foregoing notwithstanding, even if charging a fee for cashing checks is an “activity,” as contemplated in § 1831a(j)(2), 12 U.S.C. § 1831a(i) expressly authorizes states to impose “more stringent restrictions” on the activities of state banks, and directs courts to avoid a contrary construction. There are only two possible constructions of § 1831a(j)(2). The first is Appellant’s proffered construction — that an out-of-state state bank can conduct any activity that is permissible *847 under the laws of the host state for the host state’s banks or national banks. The second construction, advanced by Appellee, is that an out-of-state state bank may conduct any activity permissible under the laws of the host state for state or national banks or any activity that is permissible under -federal law for national banks. Although both constructions are plausible, Congress has instructed us to construe the statute in the manner that preserves the state’s right to further restrict the activities of state banks. See 12 U.S.C. § 1831a(i) (2012). Accordingly, we adopt Appellant’s proffered construction.[2] This construction more closely follows the language and purpose of the statutory scheme. It seems reasonable and consistent with a federal objective that Congress would seek to avoid a circumstance under which a host state can enact laws that discriminate against out-of-state state banks, thereby giving a competitive edge to the host state’s own banks. Conversely, we cannot envision a federal objective for giving out-of-state state banks the same privileges as those afforded to national banks, which essentially has the effect of putting the host state’s state banks at a competitive disadvantage.
Although the trial court erred in determining that § 1831a(j)(2) preempts section 655.85, we agree with the trial court’s conclusion that section 655.85 does not afford a private party a cause of action to redress a violation of the statute, an issue we were not asked to address in Baptista. Clearly, there is no express cause of action, and we discern no legislative intent that militates in favor of a judicially implied cause of action. See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass’n, 94 So.3d 541, 550 (Fla.2012) (primary consideration for determining whether statutory cause of action should be judicially implied is legislative intent). The entire chapter merely establishes “codes” for state financial institutions and empowers the Office of Financial Regulation to enforce the codes. Because it “ ‘merely makes provision to secure the safety or welfare of the public,’ it will not be construed as establishing civil liability.” Id. at 552 (quoting Murthy v. N. Sinha Corp., 644 So.2d 983, 986 (Fla.1994)).
Next, we address Appellant’s statutory claim based on the Uniform Commercial Code — Negotiable Instruments, Chapter 673, Florida Statutes (2012). Specifically, Appellant asserted a claim based on sections 673.4131 and 673.4081 pertaining to a bank’s acceptance of a check. Although we conclude that the trial court erred in its determination that this claim was preempted, we nevertheless affirm the disposition on this count because Appellant failed to state a cause of action. Appellant claimed that Appellee varied the terms of the check by redeeming it for less than face value. Although we agree that Appellee varied the terms of *848 the instrument, we do not agree that Appellant, who cashed the check and accepted the lesser sum, has a remedy against the bank under the Uniform Commercial Code.
Under section 673.4081, a drawee bank is not liable on a check until the bank “accepts” it. See Elmore v. Palmer First Nat’l Bank & Trust Co. of Sarasota, 221 So.2d 164, 167 (Fla. 2d DCA 1969) (deciding case based on predecessor statute). The drawee bank may either accept the check in accordance with its tenor, or it may accept the check and “vary” the “terms.” See § 673.4101, Fla. Stat. (2012). If the holder of the check disagrees with the varied terms, the holder’s alternative to acquiescence is to treat the conditional acceptance as “dishonored,” in which case the drawee bank has the right to revoke its acceptance, absolving it of liability to the payee under sections 673.4101(1) and 673.4081, Florida Statutes (2012). Here, because Appellant accepted the varied terms, Appellee’s sole obligation was to pay the draft as varied. See § 673.4131(l)(b), Fla. Stat. (2012) (acceptor of draft obligated to pay according to varied terms of draft); see also § 673.4101(3), Fla. Stat. (2012). (holder’s assent to varied terms discharges drawer and indorser); § 673.6011(1), Fla. Stat. (2012) (obligation of party discharged as stated in Chapter 673).
Appellant also alleged a claim under the Florida Consumer Collection Practices Act, sections 559.55-.785, Florida Statutes (2012). We affirm the dismissal of this claim without discussion.
Finally, Appellant’s claim for unjust enrichment fails for three distinct reasons. First, the check was an express contract between the maker and Appellant, the obligations on which are discharged under the Uniform Commercial Code or under simple contract principles. See § 673.6011(1), Fla. Stat. (2012). The existence of an express contract negates an action under an unjust enrichment theory. Diamond “S” Dev. Corp. v. Mercantile Bank, 989 So.2d 696, 697 (Fla. 1st DCA 2008) (unjust enrichment claim precluded by existence of express contract between parties concerning same subject matter). Second, because Appellant accepted the bank’s varied terms, thereby absolving the bank of liability under the Uniform Commercial Code, his claim for unjust enrichment must fail. And third, because the bank immediately paid the check in exchange for the fee, Appellant cannot claim that it was unjustly enriched. See Pereira v. Regions Bank, 752 F.3d 1354, 1358 n. 6. (11th Cir.2014) (no claim for unjust enrichment where bank provided service of immediately cashing check in exchange for fee).
AFFIRMED.
LAWSON, C.J. and COHEN, J., concur.

. The parties did not favor the trial judge with a citation to this definition, nor has it been cited or argued on appeal.

. We have not been asked to revisit our decision in Baptista in light of Pereira v. Regions Bank, 752 F.3d 1354 (11th Cir.2014). Nevertheless, we have considered that opinion and think the Eleventh Circuit overlooked § 1 S3 la(i). As we said in Baptista, § 1 S3la(j)(l) simply prohibits states from applying a state statute in a discriminatory manner. No other construction of § 183la(j)(l) can be reconciled with § 1 S31 a(i). Nor do we think § 183la(j)(l) pertains to the type of state law at issue here. It addresses laws including “community reinvestment, consumer protection, fair lending, and establishment of intrastate branches.” The state státute at issue here, section 655.85, does not fall into any of these categories. It is not a "consumer protection” statute because it does not protect a particular class of "payee.” It protects all payees. In short, nothing in this statutory scheme manifests a Congressional intent to confer on out-of-state state banks greater privileges than a host state’s banks.